**DIATRONICS, INC., Plaintiff,**

v.

**ELBIT COMPUTERS, LTD., Advanced Technology Center, Defendant.**

**No. 85 Civ. 1147 (CHT).**

United States District Court,
S.D. New York.

July 16, 1986.

Gold & Wachtel, New York City, for plaintiff; Robert Gold, William B. Wachtel, Steven J. Cohen, Joel M. Mitnick, of counsel.

Reavis & McGrath, New York City, for defendant; Stephen R. Steinberg, Kimberlee S. Bogen, Gideon Shalkovsky, I. Amihud Ben-Porath, Elizabeth S. Pagel, Charles Malek, of counsel.

TENNEY, District Judge.

The plaintiff in this action, Diatronics, Inc. ("Diatronics"), contends that the defendant, Elbit Computers, Ltd. ("Elbit"), violated Section 10(b) ("§ 10(b)") of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j, by making certain misrepresentations in connection with the purchase of stock. In addition, the complaint sets forth claims under state law and Israeli law for common law fraud and breach of contract.[1]

The defendant now moves to dismiss the action (1) for lack of subject matter jurisdiction, (2) for improper venue, (3) based on a forum selection clause in the Share Purchase Agreement, and (4) under the doctrine of forum non conveniens. For the reasons set forth below, the Court concludes that although there is subject matter jurisdiction and venue is proper, the action should be heard in Israel where the transaction took place. Accordingly, the Court dismisses the action based on the forum selection clause and under the doctrine of forum non conveniens.

## BACKGROUND

Until 1983, the defendant in this action, Elbit, was the majority shareholder of a company known as Elmar Medical Systems

---

1. The complaint alleges eight claims for relief: (1) violation of Section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (the "Exchange Act") and Rule 10b–5 promulgated thereunder; (2) fraud and deceit; (3) breach of good faith obligation; (4) negligent misrepresentation; (5) breach of contract; (6) frustration of contract; (7) mistake; and (8) unjust enrichment. The plaintiff contends that claims 2 through 8 arise under the law of both the United States and Israel. The plaintiff is seeking actual damages of $20,000,000, together with punitive damages and attorneys' fees.

Ltd. ("Elmar"). Elmar was engaged in developing a computerized hemodialysis system to treat patients suffering from kidney disease. In 1983, the plaintiff, Diatronics, purchased the defendant's majority share interest in Elmar, pursuant to the terms agreed upon in the Share Purchase Agreement ("Purchase Agreement"). Elmar became a wholly-owned subsidiary of Diatronics. The defendant entered into two subsequent agreements with Elmar, (1) the Enhancement and Development Agreement ("Development Agreement") which provided that the defendant would continue working with Elbit to complete development of the hemodialysis system, and (2) the Production Agreement, which provided that Elbit would produce a certain number of hemodialysis machines on behalf of Elmar.

The plaintiff contends that Elbit made certain misrepresentations or omissions in connection with its sale of Elmar's shares to the plaintiff. Specifically, the plaintiff contends that approximately three months before the Purchase Agreement was signed, another company obtained a patent for a hemodialysis system which is the same as Elmar's system. The plaintiff argues that the defendant knew or should have known about the patent and the defendant failed to advise the plaintiff that such a patent existed. The plaintiff also argues that the defendant failed to perform its obligations under the Development Agreement and the Production Agreement.[2] The defendant denies these allegations, arguing that it did not make any misrepresentations or give any warranties concerning existing patents. The defendant also argues that Elmar's products do not infringe on the relevant patent and that the plaintiff is merely attempting to avoid paying the defendant the money owed pursuant to the three existing agreements.

Diatronics is a Delaware corporation, and its principal place of business is West Orange, New Jersey. Diatronics was formed on June 13, 1983 by International Institute for Medical Sciences ("IIMS") for the purpose of acquiring Elmar. The defendant, Elbit, is organized under the laws of Israel and its principal place of business is in Haifa, Israel. It is in the military and civil hardware business. Elmar is also an Israeli corporation.

Alvin S. Trenk ("Trenk") is the Chairman, President and Chief Executive Officer of Diatronics, and was previously the Chairman, President and Chief Executive Officer of IIMS. The first discussions concerning Elmar took place in late December 1982 when Trenk met with Dr. Yuval Binur, who is the president of Elbit's parent company. Trenk met with Dr. Binur several times thereafter. In April 1983, Trenk met with Benjamin Peled ("Peled"), the president of Elbit. That meeting took place in New York, and Peled and Trenk discussed the possibility of Elbit's selling its shares in Elmar.[3]

After the meeting in New York between Trenk and Peled, all of the significant events concerning the transaction at issue here took place in Israel. Trenk travelled to Israel in order to arrange the purchase of Elbit's shares in Elmar, and he retained an Israeli attorney, Michael Fox ("Fox"). On May 24, 1983, an Agreement in Principle was executed in Elbit's offices in Haifa. Trenk returned to Israel in July 1983 and the Purchase Agreement was signed in Israel on July 28, 1983. The Development

---

**2.** Elbit has pointed out that Diatronics was not a party to the Production Agreement or the Development Agreement, and therefore may not have standing to assert any claims pertaining to those agreements. Neither party has briefed the issue, and the legal arguments of both parties pertain to all three agreements. For the purposes of this motion, without reaching the issue, the Court will consider all three agreements.

**3.** Trenk prepared a letter of intent, which stated that IIMS was interested in acquiring Elbit's shares in Elmar. The parties disagree whether that letter was delivered to Peled in New York, or mailed to Peled in Israel. Even if the letter was delivered to Peled in New York, however, the contacts with Israel in this case far outweigh the few contacts with the United States that exist.

Agreement and the Production Agreement were signed in Israel on August 25, 1983.[4]

Diatronics paid Elbit $750,000 pursuant to the terms of the Purchase Agreement, and approximately $2,000,000 under the Development Agreement and the Production Agreement. Diatronics stopped making payments to Elbit in April 1984.

Elbit contends that Diatronics failed to make payments because Diatronics and Elmar were experiencing liquidity problems. Elbit has instituted an action in Israel asserting breach of contract. Diatronics contends that it ceased making payments because it had discovered a patent belonging to a third party that prevented Elmar from marketing its product. Diatronics also contends that Elbit failed to complete the necessary research on the hemodialysis system, and that Elbit did not fulfill its obligations to Elmar under the Production Agreement. This action ensued.

## DISCUSSION

### 1. *Jurisdiction and Venue*

■ The defendant argues that this action should be dismissed for lack of subject matter jurisdiction. The Court disagrees. The Court has subject matter jurisdiction since there is complete diversity between the parties. 28 U.S.C. § 1332(a)(2). Diatronics is a citizen of Delaware and New Jersey, and Elbit is a citizen of a foreign state—Israel.[5]

Elbit argues, however, that in order to fully adjudicate this case, it will be necessary to join Elmar as a plaintiff, and that joining Elmar would destroy diversity since Elmar is an Israeli corporation. To date,

however, Elmar has not been joined as a party, so that there is still complete diversity between the parties at this time. The Court will not rule based on the speculation that a party may be joined at an undetermined date in the future.[6] Accordingly, the defendant's motion to dismiss for lack of jurisdiction is denied.

■ The defendant also argues that venue is improper in this district. Since the defendant is an alien, however, the defendant may be sued in any district. See 28 U.S.C. § 1391(d). Thus, venue is proper.

### 2. *Forum-Selection/Choice of Law Clause*

■ The defendant argues that this matter should be litigated in Israel based on Section 10.1 of the Purchase Agreement, a forum-selection clause, which provides that the parties will submit to the jurisdiction of the court in Haifa, Israel, and that Israeli law will apply.[7] Specifically, the Purchase Agreement states:

This agreement is subject to, and shall be interpreted in accordance with the laws of the State of Israel; and the parties hereto submit in advance to the jurisdiction of the District Court of Haifa.

In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–18, 92 S.Ct. 1907, 1916–17, 32 L.Ed.2d 513 (1972), the Supreme Court held that a freely negotiated forum-selection clause is enforceable absent a showing that the clause is either (1) unreasonable under the circumstances, or (2) the product of fraud, overreaching, mistake or coercion. *See also AVC Nederland B.V. v. Atrium*

---

**4.** Under the terms of the Purchase Agreement, Elbit agreed to sell its shares in Elmar, and to assign to Diatronics a $950,000 debt owed by Elmar to Elbit. Diatronics agreed to pay Elbit $1,000,000 in four installments of $250,000 each. The Development Agreement provided that Diatronics would pay Elbit approximately $1,200,000 to continue developing the hemodialysis system. The Production Agreement provided that Elbit would manufacture 1,000 units—i.e., hemodialysis machines—and Elmar would pay Elbit $13,000 per unit, totalling $13,000,000.

**5.** In addition, the amount in controversy exceeds $10,000.

**6.** The parties disagree over whether the plaintiff has stated a cause of action under the Exchange Act. There is, however, no need to reach that question. Since there is diversity jurisdiction, it is not necessary to determine whether there is also federal question jurisdiction.

**7.** The Development Agreement and the Production Agreement also include a choice of law clause. Both Agreements state: "This Contract shall be construed and interpreted in accordance with the laws of the State of Israel."

**126**

*Inv. Partnership,* 740 F.2d 148, 155–59 (2d Cir.1984) (Friendly, J.); *Dukane Fabrics Int'l, Inc. v. M.V. Hreljin,* 600 F.Supp. 202, 203 (S.D.N.Y.1985); *Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.,* 493 F.Supp. 626, 628–29 (S.D.N.Y. 1980). The plaintiff has not made such a showing.

### (a) *A Reasonable Clause*

In order to show that the clause is unreasonable, the party opposing enforcement of the clause must establish that trying the case in the agreed-upon forum will be so difficult or so inconvenient that the objecting party will—for all practical purposes—be deprived of his day in court. *Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917. The plaintiff has failed to show that the forum-selection clause in the Purchase Agreement is unreasonable.

This matter arises out of agreements that were negotiated and executed in Israel. Many of the individuals involved in this matter are in Israel, as are many of the pertinent documents. The plaintiff retained an Israeli attorney, and Trenk travelled to Israel on behalf of the plaintiff to conduct the transaction. The transaction involved the purchase of shares of an Israeli company—Elmar. The seller, who is the defendant in this case, is also an Israeli company. The work to be performed under the Production Agreement and the Development Agreement was to be performed in Israel.

■ Although some witnesses may have to travel from the United States to Israel, that does not make the forum so inconvenient as to meet the *Bremen* test.[8] Regardless of whether the case is tried in Israel or New York, one party will be inconvenienced, and will be forced to bring witnesses and documents to the selected forum. It is reasonable to conclude that when the parties drafted the Purchase Agreement and the forum-selection clause, they recognized that it might be necessary for witnesses to travel to Israel if the matter eventually gave rise to litigation. *See Full-Sight Contact Lens v. Soft Lenses, Inc.,* 466 F.Supp. 71, 73 (S.D.N.Y.1978).[9] By agreeing to the forum-selection clause, the plaintiff agreed to accept the burden of litigating in Israel.

### (b) *Fraud*

The plaintiff argues that the forum-selection clause should not be enforced because the Purchase Agreement was allegedly induced by fraud. This argument has no merit. The Supreme Court addressed this issue in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1973), stating:

In *The Bremen* we noted that forum-selection clauses "should be given full effect" when "a freely negotiated private international agreement [is] unaffected by fraud...." 407 U.S., at 13, 12, 92 S.Ct. at 1914. This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclu-*

8. The plaintiff argues that this court also has jurisdiction over the action, because the forum-selection clause at issue here does not provide that Haifa would be the exclusive forum for litigating this action. The Court agrees that the forum-selection clause does not create exclusive jurisdiction and therefore does not deprive this Court of jurisdiction. *See Coface v. Optique Du Monde, Ltd.,* 521 F.Supp. 500, 506 (S.D.N.Y. 1980). The Supreme Court, however, stated in *Bremen* that a "forum selection clause should control absent a strong showing that it should be set aside." 407 U.S. at 15, 92 S.Ct. at 1916. In this instance, the plaintiff has failed to make such a showing.

9. In considering whether a venue clause should be enforced, courts have also considered other factors such as injustice, public policy, availability of remedies in the chosen forum, governing law, and conduct of the parties. *See Gaskin v. Stumm Handel,* 390 F.Supp. 361, 365 (S.D.N.Y. 1975). After a careful examination of the record in this matter, the Court concludes that in the instant case none of these factors is sufficient to overcome the venue selection clause.

*sion of that clause in the contract* was the product of fraud or coercion. (Emphasis in original).

It is undisputed that the forum-selection clause was freely negotiated by the parties. Indeed, the plaintiff's attorney, Fox, drafted the initial agreement which provided that Israeli law would govern, and that the parties would submit to jurisdiction in Israel. In an affidavit submitted in connection with this motion, Fox states that he intentionally included the forum-selection/choice of law clause in the Purchase Agreement, and that he considered it appropriate to select "the law of the State of Israel as the governing law [because] the main subject matter of the Share Purchase Agreement was shares in an Israeli company." Fox Aff. ¶ 26. Since there has been no allegation that the forum-selection clause at issue here was the product of fraud, overreaching, mistake, or coercion, the defendant is entitled to have the forum-selection clause enforced. The allegation that the Purchase Agreement was the product of fraud does not provide grounds for disregarding the forum-selection clause.

### (c) *Section 10–b*

■ The final argument that the plaintiff makes concerning the forum-selection clause is that it should not be enforced because the plaintiff has alleged a claim under the Securities Exchange Act. In *AVC Nederlander,* 740 F.2d 148, however, the Second Circuit rejected that argument. The court held that where a forum-selection clause satisfies the *Bremen* test, and "the foreign elements of a transaction ... are sufficiently meaningful," the forum-selection/choice of law clause should be enforced even if the action was brought under the Securities Exchange Act. *Id.* at 156–60. In this instance, the *Bremen* test is satisfied, and the foreign elements of the transaction far outweigh all other elements.

Thus, for the reasons set forth above, the Court concludes that the case should be dismissed based on the forum-selection clause in the Purchase Agreement.

### 3. *Forum Non Conveniens*

■ The defendant also argues that the case should be dismissed under the doctrine of forum non conveniens. The Court agrees.

The initial inquiry in considering a forum non conveniens motion is whether there is an adequate alternative forum. *See Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). In the case at bar, the plaintiff argues that there is no alternative forum because the procedural laws of Israel would prevent the plaintiff from filing an action in the Israeli courts. Under Israeli law, in order to commence an action, the complaining party must pay a non-refundable fee of 2% of the amount the party is seeking to recover. Because the plaintiff is seeking an award of $20,000,000, the filing fee would be $400,000. The plaintiff contends that it does not have any way of paying that amount, and, therefore, it is barred from access to the courts of Israel.

The plaintiff is essentially arguing that Israeli law is less favorable to it than United States law is. The Supreme Court firmly rejected this type of argument in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The Court held that dismissal of an action under the doctrine of forum non conveniens will not be barred solely because of the possibility of an unfavorable change in law. 454 U.S. at 247–49, 102 S.Ct. at 261–62. The Supreme Court stated that an unfavorable change in the law should be considered only "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all...." *Id.* at 254, 102 S.Ct. at 265.

Although the plaintiff argues that it is barred from the Israeli courts, that simply is not the case. Israel's law requiring a deposit does not bar Diatronics. The filing fee is based on the amount of the plaintiff's claim, and, here, Diatronics is seeking damages of $20,000,000. Diatronics can obtain access to the Israeli courts, and thereby obtain a remedy, by lowering the amount

of its claim. Although the plaintiff may be forced to seek less damages, "the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens." *Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir.1978), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). Thus, there is no merit to the argument that Israel does not provide an alternative adequate forum.

In *Gulf Oil Co. v. Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843, the Supreme Court set forth a number of factors to be considered in determining whether an action should be dismissed under the doctrine of forum non conveniens. Those factors concern both the private interests of the litigant and the public interest of society. The private factors include the relative ease of access to sources of proof, the availability of compulsory process for attendance of witnesses, the cost of obtaining willing witnesses, and other advantages and obstacles to a fair trial. The public factors include the local interest in having controversies decided at home, court congestion, and the necessity of applying another forum's law. *Id.* at 508–09, 67 S.Ct. at 843. *See also Piper Aircraft Co. v. Reyno*, 454 U.S. at 255–61, 102 S.Ct. at 265–68; *Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 654 F.2d at 158; *C–Cure Chemical Co., Inc. v. Secure Adhesives Corp.*, 571 F.Supp. 808, 822–23 (W.D.N.Y. 1983). In considering these factors, the trial court is vested with broad discretion to consider the convenience of witnesses and the ends of justice. *See Alcoa Steamship Co.*, 654 F.2d at 158.

The private factors here point strongly to Israel as the proper forum for trying this action. Almost every significant event concerning the pertinent transaction took place in Israel. Both the defendant and the purchased company are in Israel, and both conduct their business there. The agreements at issue here were negotiated and executed in Israel. Trenk, the president of Diatronics, flew over to Israel for the negotiations, and he retained an Israeli attorney who negotiated and helped to write the agreements. All payments for the shares purchased and work performed were made in Israel.

In the instant action, the plaintiff is essentially asserting two claims: (1) that Elbit made certain misrepresentations prior to the time that the parties entered into the Purchase Agreement, and (2) breach of contract. Both of those claims pertain to conduct in Israel. If any misrepresentations were made concerning the competing patent at issue here, those misrepresentations had to have been made in Israel, since the relevant patent had not been registered at the time that the parties met in the United States.[10] Similarly, if the defendant breached any of the agreements, that breach must have taken place in Israel since that is where the agreements were to be performed.

The plaintiff argues that the action should be litigated in the United States because Diatronics is a United States corporation, and the initial discussions concerning the purchase of Elmar's shares took place in the United States. These facts, however, do not create a sufficient nexus between the action and this forum to support litigating this matter in the United States rather than in Israel.[11] *See Shepard Niles Crane & Hoist Corp. v. Fiat, S.p.A.*, 84 F.R.D. 299, 304 (W.D.N.Y.1979).

---

**10.** The initial negotiations between the parties which took place in the United States occurred between January and April 1983. The relevant patent, however, was not registered until May 1983. The patent owner has not made any assertion that Elmar's system infringes the relevant patent.

**11.** In arguing that there is a nexus between the action and this forum, the plaintiff points to its own conduct in the United States. For example, the plaintiff states that it intended to market Elmar's product in the United States, and that the plaintiff attempted to obtain financial backing from United States investors. However, the allegations in this action—that the defendant made certain misrepresentations and breached the relevant agreements—have little or no relationship to the plaintiff's activities in the United States.

The fact that the plaintiff is a United States corporation, does not prevent dismissal of the action, since an American citizen does not have an absolute right to sue in an American court. *See Ionescu v. E.F. Hutton & Co. (France) S.A.*, 465 F.Supp. 139, 145 (S.D.N.Y.1979) ("[P]arties who choose to engage in international transactions ... cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere."). In terms of the discussions which took place in the United States, that contact with the United States is insignificant when compared with the extended negotiations that took place in Israel, and the fact that the relevant agreements were executed and performed in Israel.

Another factor weighing in favor of dismissal is that most of the important witnesses and evidence needed for trial are located in Israel. The agreements were negotiated in Israel, and most of the individuals involved in the negotiations are there. Elbit agreed to develop and manufacture a hemodialysis machine for Elmar, and the employees responsible for carrying out the terms of the Development Agreement and the Production Agreement are in Israel. The records relating to that work are also in Israel.

Although not all of the witnesses are in Israel, it is clear from the record that Diatronics will be able to produce its key witnesses. There is no indication that Diatronics will be prejudiced by a lack of sufficient witnesses if the action is litigated in Israel. Trenk, who is in the United States and was involved in the negotiations on behalf of the plaintiff, is clearly one of Diatronics' key witnesses. Although litigating the case in Israel may be inconvenient for him, it is evident that Trenk will travel to Israel in connection with a trial of this matter. Moreover, he travelled to Israel several times in connection with the negotiation and execution of the agreements at issue here, so that it does not seem unjust to require him to travel to Israel again.

Eugene J. Rubel was the Vice-President of Elmar during 1982–1983, and he became the Senior Vice-President after Diatronics purchased Elmar. Mr. Rubel also appears to be one of the plaintiff's key witnesses. He states in an affidavit submitted as part of the record that although travelling to Israel to testify would be inconvenient for him, he is willing to do so if it is necessary. *See* Aff. of Eugene J. Rubel, dated March 27, 1986, at ¶ 9.[12]

The public interest factors in this case also support the conclusion that the matter should be litigated in Israel. Since the entire transaction took place in Israel, and the matter involves two Israeli companies, Elbit and Elmar, the community in Israel has a greater interest in the dispute than the New York community has. Elbit has already instituted an action in Israel concerning this matter,[13] and permitting the action in the United States to proceed would result in significant duplication of legal efforts by all parties. Furthermore, assuming the choice of law provisions in

---

**12.** The plaintiff submitted the affidavits of numerous individuals that the plaintiff intends to call at trial. Although all of them stated that testifying in Israel would be inconvenient, only one individual, J. Morton Davis, stated that he would not be willing to travel to Israel to give testimony on a voluntary basis. *See* Davis Aff. at ¶ 5. Mr. Davis is the President and Chief Executive Officer of D.H. Blair & Co., Inc., an investment banking firm. He states that he would testify concerning the question of whether Trenk relied on Elbit's alleged misrepresentations, and he would testify concerning damages suffered by Diatronics due to its inability to market the system. *See* Davis Aff. at ¶¶ 2–4. It appears from the record, that even if Mr. Davis does not agree to appear and his appearance cannot be compelled by subpoena under Israeli law, Diatronics will be able to produce other witnesses and evidence concerning reliance and damages. Mr. Davis' testimony is not so crucial to Diatronics' case that the defendant's motion for dismissal should be denied.

**13.** Elbit instituted an action in Israel claiming that Elmar and Diatronics breached the parties' agreements by failing to pay Elbit the monies due to it under the relevant agreements. Diatronics reserved its right to assert counterclaims against Elbit.

the agreements are valid, Israeli law will govern. The application of foreign law weighs in favor of dismissing the action.

In sum, for the reasons set forth above, the Court concludes that this action should be litigated in Israel, rather than in the United States. Accordingly, the defendant's motion to dismiss based on the forum-selection clause, and under the doctrine of forum non conveniens is granted.

So Ordered.