**MEDOIL CORP., Plaintiff,**

**v.**

**CITICORP a/k/a Citicorp Investment Bank Switzerland, Defendant.**

**No. 89 Civ. 2827 (LLS).**

United States District Court,
S.D. New York.

Feb. 7, 1990.

Robert A. Milana, James E. Pratt, Kirlin, Campbell & Keating, New York City, for plaintiff.

Lawrence W. Newman, Baker & McKenzie, New York City, for defendant.

## OPINION AND ORDER

STANTON, District Judge.

Defendant Citicorp moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b), asserting that a forum-selection clause in the parties' contract requires that plaintiff Medoil Corporation bring this action in Zurich, Switzerland.[1]

1. Citicorp brings this motion under Rules 12(b)(3), improper venue, and 12(b)(6), failure to state a claim. However, a motion to dismiss pursuant to a forum-selection clause is properly considered a motion to dismiss for lack of venue. *New York Marine Managers, Inc. v. M.V. Topor–1,* 88 Civ. 3682 (MBM) (S.D.N.Y.1989) (available on WESTLAW, 1989 WL 4030). *See also Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.,* 493 F.Supp. 626, 629 (S.D.N.Y.1980).

## BACKGROUND

Medoil is a Liberian corporation engaged in the shipping business. Its sole place of business is Medoil (USA) Inc. in Greenwich, Connecticut, and its only shareholders are Evangelos Karvounis and his wife Theodora Karvounis. Mr. Karvounis is Medoil's president and Mrs. Karvounis is its treasurer. Citicorp is a multinational financial institution that controls Citicorp Investment Bank (Switzerland) ("CIBS"), a Swiss corporation with an office in Zurich, Switzerland.[2]

Mr. Karvounis met with CIBS representatives in Zurich in early 1986 to discuss opening an account for Medoil. Medoil opened the account in March 1986, and Mr. and Mrs. Karvounis signed CIBS's printed forms entitled Account Agreement, Agreement Governing Fiduciary Placements, Margin Agreement and Declaration of Pledge (collectively, the "agreements"). All of the agreements contained the following forum-selection clause in bold type:

> All relations between the Bank and the Account Holder(s) are governed by Swiss law. Place of performance, place of prosecution for debts and exclusive venue for all legal actions are at the location of the Bank's office appearing on this Agreement regardless of the Account Holder(s)'s residence or domicile. The Bank, however, may bring action against the Account Holder(s) before the courts or any other competent authority at the place of residence of the Account Holder(s) or elsewhere, in which case Swiss law will also govern and be applied.[3]

The office location appearing on the agreements is Zurich.

The Margin Agreement, Fiduciary Placement Agreement and Declaration of Pledge state: "The applicable law and jurisdiction

2. The complaint alleges that CIBS "was in fact Citicorp and nothing more than the name under which Citicorp did business in Switzerland to satisfy Swiss banking laws." (Complaint ¶ 11).

3. The Margin Agreement and Declaration of Pledge refer to the "Account Holder(s)" as the "Collateral/Account Holder(s)."

will be governed by the Account Agreement, which is known to and has been accepted by the Account Holder(s) as governing the Account Holder(s)'s business relationship with the Bank." The agreements list Medoil's address and principal place of business as Monrovia, Liberia.

The Account Agreement offers several services and investments for customers to select. One of the services is entitled "Safekeeping Accounts and Securities Transactions," and states that the customer is to initial a particular box if he or she wishes "to authorize the Bank to take custody of securities, valuables and documents and to execute securities transactions for the account." Mr. and Mrs. Karvounis did not initial this box, although they did select other services by initialing the appropriate boxes.

The complaint alleges that the funds Medoil had deposited in its Zurich account were used to make unauthorized trades. (Complaint ¶ 19). Medoil also contends that it purchased shares of Clark Copy International Corporation ("Clark") because of false statements and misleading omissions of CIBS employees. (*Id.* ¶¶ 24–25). Mr. Karvounis discussed a "special deal" when he first met with Pieter Danielsson and David Tye (vice presidents of CIBS, Zurich; see Ptf.'s Exs. 15, 17) in Zurich in early 1986. (Affidavit of Evangelos Karvounis sworn to August 9, 1989 ¶ 11). In the summer of 1986, Mr. Danielsson called Mr. Karvounis from New York and the two met to discuss a private placement of Clark shares at the Waldorf–Astoria in New York. (*Id.* ¶ 15). Mr. Karvounis again met with Mr. Danielsson to discuss the Clark transaction in Zurich in October 1986 (*Id.* at ¶ 16).

Mr. Karvounis purchased Clark shares in December 1986 and June 1987. (*Id.* at ¶¶ 18–19). Although Medoil asserts that these were over the counter transactions effected on NASDAQ between a New York-based broker-dealer, Mount Keen & Co., Inc., and Citicorp in New York (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 20–21; see also Ptf.'s Exs. 11–13), Mr. Karvounis

placed the purchase orders in telephone conversations with Mr. Danielsson's assistant, Ms. Graf. The stock was purchased through and credited to Medoil's CIBS account. (Ptf.'s Ex. 9; Defendant's Reply Memorandum of Law Exhibit B).

Medoil brings this action for compensatory and punitive damages under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78o (1988), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1988), and pendent state claims.

## DISCUSSION

Citicorp asserts the complaint should be dismissed because the forum-selection clause requires Medoil to bring this suit in Zurich. Medoil asserts that the clause does not cover these transactions and, in any event, it should not be enforced.

### A. Applicability of the Forum–Selection Clause

■ Medoil asserts that because it did not initial the box in the Account Agreement authorizing CIBS to execute securities transactions, the allegedly fraudulent transactions are outside the scope of the agreements and, therefore, the forum-selection clause does not apply.

However, this action arises out of the relationship created when the parties signed the forms containing the forum-selection clause. Although initially Medoil may not have provided for the conduct of securities transactions through the account, it made such transactions later. Medoil used the account to make several securities purchases within two weeks after it was opened, (see Defendant's Reply Memorandum of Law Exhibit B), and Medoil admits that Mr. Karvounis authorized some of the allegedly fraudulent transactions (see Complaint ¶¶ 20, 28). The agreements state that actions brought by Medoil regarding the account must be resolved under Swiss law in a Swiss forum. This is such a dispute.

Medoil asserts that the disputed transactions involving Clark shares are not governed by the forum-selection clause be-

cause they were not purchased by CIBS or from Medoil's account. Instead, Medoil asserts that the transactions were effected in New York between Citicorp's New York office and Mount Kean. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 20–21).

However, the mechanics of execution of the Clark transaction are not of decisive consequence as long as the transaction took place in the CIBS account. Medoil's December 31, 1986 and June 30, 1987 account statements demonstrate Medoil used the CIBS account to purchase the Clark shares. (*See* Defendant's Reply Memorandum of Law Exhibit B).[4]

**B. Enforcement of the Forum–Selection Clause**

Medoil contends that the forum-selection clause should not be enforced because it was the product of the parties' unequal bargaining position, is binding on only Medoil and will deprive Medoil of its day in court. It also asserts that enforcement of such clauses in cases involving claims under federal securities laws is against public policy.

Medoil's burden in demonstrating that the forum-selection clause should not be enforced is a heavy one, as "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). If the clause is the product of "arm's-length negotiation by experienced and sophisticated businessmen," then it should be enforced absent "some compelling and countervailing reason." *Id.* at 12, 92 S.Ct. at 1914. *See also Seward v. Devine,* 888 F.2d 957, 962 (2d Cir.1989) (forum-selection clause enforced because there was no showing that it would be "unreasonable or unjust").

**1. *Unequal Bargaining Position***

Medoil asserts the forum-selection clause should not be enforced because it was the product of undue influence and unequal bargaining power. *See M/S Bremen,* 407 U.S. at 12, 92 S.Ct. at 1914.

■ Mere absence of negotiation over the terms of a contract does not render a forum-selection clause unenforceable. *Karl Koch Erecting Co., Inc. v. New York Convention Center Development Corp.,* 838 F.2d 656, 659 (2d Cir.1988); *Dukane Fabrics International, Inc. v. M.V. Hreljin,* 600 F.Supp. 202, 203–04 (S.D.N.Y. 1985).

■ Medoil is apparently experienced in international transactions, doing business in at least six West African countries. (Affidavit of Evangelos Karvounis sworn to August 9, 1989 ¶ 8). Mr. Karvounis met with CIBS representatives in Switzerland to discuss the account before Medoil decided to open it. Medoil could have opened an account in the United States, but it freely choose to do business with CIBS, a choice which included limitations on its choice of forum for any disputes that might later arise. *See Bense v. Interstate Battery System of America, Inc.,* 683 F.2d 718, 722 (2d Cir.1982) (forum-selection clause bound plaintiff because it "was part of the bargain into which he freely entered.").

**2. *Nonmutuality of the Forum–Selection Clause***

■ Medoil asserts that the forum-selection clause is not enforceable because it is "nonmutual" in that it limits only Medoil's choice of forum. Medoil bases this argument on a recently-abrogated New York rule that arbitration agreements binding only one party are not valid. *See Sablosky v. Edward S. Gordon Co., Inc.,* 73 N.Y.2d 133, 538 N.Y.S.2d 513, 516, 535 N.E.2d 643, 646 (Ct.App.1989) ("Mutuality of remedy is not required in arbitration contracts").

Even when this rule was in effect, however, the Second Circuit held that a nonmutual forum-selection clause requiring one party to bring any action in state court was enforceable. *Karl Koch,* 838 F.2d at 659–60. Therefore, the nonmutuality of the

---

**4.** The statements show purchases of Clark shares on December 5, 1986 and June 26, 1987, approximately the dates alleged in the complaint. (*See* Complaint ¶¶ 28, 54).

forum-selection clause does not render it invalid.

### 3. *Depriving Medoil of Its Day In Court*

■ Nor is the forum-selection clause unreasonable because it requires that Medoil bring this action in a country whose law or procedure is different or less favorable to it than that of the United States. *Karlberg European Tanspa, Inc. v. JK–Josef Kratz Vertriebsgesellschaft mbH,* 618 F.Supp. 344, 348–49 (N.D.Ill.1985) (West Germany); *Dukane,* 600 F.Supp. at 204 (Italy). Instead, Medoil must demonstrate that Switzerland is so difficult or inconvenient a forum that Medoil essentially will be deprived of its day in court. *See Diatronics, Inc. v. Elbit Computers, Ltd.,* 649 F.Supp. 122, 126 (S.D.N.Y.1986), *aff'd,* 812 F.2d 712 (2d Cir.1987); *Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.,* 493 F.Supp. 626, 630 (S.D.N.Y.1980).

Swiss courts are a fair and reasonable forum for resolution of disputes. *See Schertenleib v. Traum,* 589 F.2d 1156, 1164–66 (2d Cir.1978) (Switzerland provides alternate forum under doctrine of forum non conveniens); *ACLI International Commodity Services, Inc. v. Banque Populaire Suisse,* 652 F.Supp. 1289, 1292–93, 1295–96 (S.D.N.Y.1987) (same); *Raskin, S.A. v. Datasonic Corp.,* No. 86 C 7596 (N.D.Ill.1987) (available on WESTLAW, 1987 WL 8180) (requiring action be brought in Switzerland under forum-selection clause will not deprive plaintiff of day in court). There is no showing that litigating this claim in Switzerland will be extraordinarily inconvenient to these foreign corporations, especially in light of Mr. Karvounis' prior trips to Switzerland in connection with this account.

### 4. *Public Policy*

■ Medoil argues that the forum-selection clause is against public policy because it prevents Medoil from pursuing its rights under the antifraud provisions of the securities laws. A forum-selection clause need not be enforced if it would be contrary to a strong public policy of the forum in which the plaintiff brought the original action. *M/S Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916; *Red Bull Assocs. v. Best Western Int'l Inc.,* 862 F.2d 963, 966 (2d Cir.1988).

However, such clauses have been enforced in securities laws cases. In *AVC Nederland B.V. v. Atrium Investment Partnership,* 740 F.2d 148 (2d Cir.1984), the court enforced a forum-selection clause in an action under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. 740 F.2d at 149. The parties in the action were Dutch, and the forum-selection clause provided any action had to be brought in The Netherlands. *Id.* at 149 & 151. The court enforced the clause because the foreign elements of the transaction were "sufficiently meaningful." *Id.* at 160.[5] It recognized that it was "highly unlikely that, even apart from the challenged clause, a court in The Netherlands would apply the Securities Exchange Act." *Id.* at 158.

This action is brought by a Liberian corporation against a Swiss corporation over transactions in an account located in Switzerland. The parties met to discuss the account and later signed the relevant documents in Switzerland. Under the circumstances, the foreign elements of this transaction are sufficiently meaningful to require enforcement of the forum-selection clause. *See Diatronics,* 649 F.Supp. at 126 (forum-selection clause enforced in Rule 10b–5 action); *Fustok v. Banque Popu-*

---

**5.** *AVC* relied on the Supreme Court's decision in *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), which enforced an agreement to arbitrate a securities dispute outside the United States. 417 U.S. at 519–20, 94 S.Ct. at 2457–58. The Court enforced the arbitration agreement in *Scherk* despite its holding in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) that "an agreement for arbitration contained in a standard form margin contract between a customer and a large brokerage firm" violated the Securities Act of 1933. *AVC,* 740 F.2d at 157. Subsequently, the Supreme Court expressly overruled *Wilko,* see *Rodriguez de Quijas v. Shearson/American Express, Inc.,* —— U.S. ——, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989), supporting the result reached in *AVC.*

*laire Suisse,* 546 F.Supp. 506, 513–14 (S.D. N.Y.1982) (forum non conveniens applied to transfer action under Commodity Exchange Act to Switzerland).

### CONCLUSION

Citicorp's motion to dismiss is granted. The clerk of the court is directed to dismiss the complaint.