[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 99-8127

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 09, 2000
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-01347-CV-TWT-1

IRAOLA & CIA, S.A.,

Plaintiff-Counter-Defendant-
Appellant-Cross-Appellee,

versus

KIMBERLY-CLARK CORPORATION,
J.N. ANDERSON,

Defendants-Counter-Claimants-
Appellees-Cross-Appellants,

GEORGE SEMONES,

Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(November 9, 2000)

Before ANDERSON, Chief Judge, BLACK and HALL[*], Circuit Judges.

_____

[*]Honorable Cynthia H. Hall, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

ANDERSON, Chief Judge:

Appellant Iraola & CIA, S.A. ("Iraola") appeals the district court's determination that subject matter jurisdiction in this action existed under 28 U.S.C. § 1332. Iraola argues that § 1332 (a)(2) does not permit it, a foreign company, to bring suit against defendants from different states. Alternatively, it argues that the inclusion of foreign defendant Geo Med defeated jurisdiction. Appellees Kimberly-Clark, J.N. Anderson, and George Semones cross-appeal, challenging the district court's failure to award attorneys' fees.

## I. FACTS

Iraola is an Argentine company and Kimberly-Clark is a citizen of Delaware and Texas; Appellees Anderson and Semones, employees of Kimberly-Clark, are citizens of Georgia. Iraola contracted with Kimberly-Clark to distribute its medical products in Argentina. After Kimberly-Clark terminated the contract, Iraola sued, alleging that Kimberly-Clark tortiously interfered with its employee and business relations by distributing products through former Iraola employee Robert Alpert. Iraola named Kimberly-Clark, Anderson, and Semones as defendants in this action. Kimberly-Clark counterclaimed for payment of unsold supplies Iraola retained at the time of the contract termination.

Iraola also named as a defendant Geo Med, the company through which Kimberly-Clark distributed its products in Argentina before its contract with Iraola was terminated. Geo Med invoices that Iraola obtained showed a Georgia address and telephone number that Iraola learned belonged to defendant Semones, a Kimberly-Clark employee. Thus Iraola thought that Semones owned and operated Geo Med and that it was based in Georgia. It was unable to serve Geo Med and learned in discovery that the company was in fact owned by Iraola's former employee, Alpert, a citizen of Argentina. The Appellees maintain that Geo Med is a fictitious company, and that Alpert just used the name as a straw company for Kimberly-Clark to send its products for shipment to Argentina.

Iraola claims that it only learned in early August that Geo Med was owned by Alpert and thus arguably an Argentine entity. It claims that it acted promptly, advising the district court that the addition of Geo Med would destroy subject matter jurisdiction and suggesting to the Appellees that all of the parties should jointly dismiss the case so that it could be brought in state court. The Appellees refused to agree to a voluntary dismissal of the suit and thus Iraola made a motion to dismiss before the district court. The parties went ahead with the rest of discovery, and the Appellees filed a motion for summary judgment and default judgment on the counterclaim because Iraola never responded to it.

The district court ruled on the motions for dismissal, summary judgment, and default judgment at the same time. The court first granted a default judgment in favor of Kimberly-Clark on its counterclaim for payment for unsold supplies because Iraola had never responded to the counterclaim. Then the district court granted Iraola's motion for voluntary dismissal under Fed. R. Civ. P. 41(a)(2).[1] The court did not rule on whether the Appellees were entitled to attorneys' fees in light of the voluntary dismissal.

## II. DISCUSSION

A. <u>Section 1332(a)(2) Diversity Where the Parties on One Side are Citizens of Different States and the Party on the Other Side is the Citizen or Subject of a Foreign State.</u>

As noted above, Iraola, a citizen of a foreign state, sued Kimberly-Clark, a citizen of Delaware and Texas, and two Georgia citizens, Anderson and Semones. Iraola's primary argument on appeal is that there is no diversity jurisdiction here. Iraola argues that 28 U.S.C. §1332(a)(2) provides diversity jurisdiction, in a case where the parties on one side are citizens or subjects of a foreign state, <u>only</u> where the parties on the other side are citizens of a single state. In other words, Iraola

_____

[1] Had the district court granted the dismissal first, it would not have had jurisdiction to grant the default judgment because that claim did not have an independent jurisdictional basis.

4

argues that there is no diversity jurisdiction in a case involving citizens or subjects of a foreign state on one side where the parties on the other side are citizens of <u>different</u> states. Thus, Iraola argues that there is no diversity jurisdiction in the instant case because the parties on the Kimberly-Clark side of the case include citizens of several different states – Delaware and Texas in the case of Kimberly-Clark and Georgia in the case of Anderson and Semones. Section 1332(a)(2) provides, in pertinent part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
> ...
> (2) <u>citizens of a State and citizens or subjects of a foreign state</u>;

(Emphasis added). Iraola argues that the plain meaning of the statute is that all non-foreign parties must be from a single state. Iraola derives this argument from the statute's use of the article "a" in the phrase "citizens of <u>a</u> State."

This Court recently stated "[i]n construing a statute we must begin, and often should end as well, with the language of the statute itself." *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998)(en banc)(internal quotation and citation omitted). However, we have held that where the language is ambiguous, resort to legislative history is appropriate. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1337 (11th Cir. 1999)(en banc); *United States v. DBB, Inc.,* 180

5

F.3d 1277, 1281 (11th Cir. 1999)("We will only look beyond the plain language of the statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999)("When interpreting a statute, we look to its plain language, resorting to the legislative history in an attempt to discern congressional intent only when the language of the statue is unclear.").

Thus, we first examine the language of the statute for ambiguity. Certainly the meaning that Iraola has proffered is one possible reading of the statute. However, the same language is capable of another plausible interpretation: each non-foreign party must be the citizen of "a" State and cannot be a citizen of a foreign state or a stateless expatriate. *See, e.g., Sadat v. Mertes*, 615 F.2d 1176 (7th Cir. 1980)(holding that jurisdiction under § 1332(a)(2) did not exist over a stateless expatriate). In other words, in a case involving citizens of several states as plaintiffs, and citizens of a foreign state as defendants, one has a case fitting literally within the language of the statute: "citizens of a State and citizens of a foreign state." Each plaintiff is a "citizen of a State," i.e. a citizen of one of these United States. Because the language of the statute can be read in two plausible

6

ways, we conclude that the statute is ambiguous, and thus we examine the structure and the purpose of the statute as well as its legislative history.

Congress first adopted the language at issue in 1875. *See* Act of March 3, 1875, ch. 137, 18 Stat. 470 (1875). At that time, the statute was not limited to diversity jurisdiction and instead defined the original jurisdiction of the federal circuit courts. The statute only permitted diversity jurisdiction between "citizens of different States" and between "citizens of a State and foreign states, citizens, or subjects." *Id.* It was not until 1948 that Congress created § 1332, a separate statute covering only diversity jurisdiction.[2]

Focusing on the statute as it existed in 1948, it is clear that its structure indicates that Congress intended to provide a federal forum where the parties were diverse. For example, § 1332(a)(1) provides a federal forum where the opposing

---

[2]     The 1948 version of 28 U.S.C. § 1332 stated, in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between–

(1) citizens of different States;

(2) citizens of a State, and foreign states or citizens or subjects thereof; and

(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

7

parties are "citizens of different States." Under this section, there is diversity

jurisdiction where the opposing parties are diverse, regardless of whether the

parties on any given side of the case are citizens of a single state or are citizens of

several states. *See, e.g., Glickstein v. Sun Bank/Miami, N.A.* 922 F.2d 666, 668

(11th Cir. 1991). The clear intent of Congress was to provide a federal forum

where the parties are diverse. Similarly, § 1332(a)(3)[3] reinforces the proposition

that the congressional intent was to provide a federal forum where the parties are

diverse. In subparagraph (3), Congress explicitly indicates that the necessary

diversity is present so long as the opposing parties are citizens of different states,

and that this diversity is not undermined by the mere fact that there are additional

parties who are citizens or subjects of a foreign state. Again, the structure of the

statute reveals the congressional purpose to provide a federal forum where the

opposing parties are diverse.

Additionally, the legislative history bolsters this interpretation that Congress

intended to provide a federal forum for diverse parties. In 1948, when Congress

reorganized and modified the existing statute on original jurisdiction, it clarified

and broadened diversity jurisdiction. Previously, the statute had clearly covered

---

[3] 28 U.S.C. § 1332(a)(3) permits diversity jurisdiction between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."

actions between aliens and citizens as well as actions between citizens of different states.  *See* 28 U.S.C. § 41 (1940 ed.).   However, the courts were split over whether the statute permitted actions where there was a citizen of one state on one side, and, on the other side, there was both a citizen of a state and an alien.  *See* 1 James Wm. Moore et al., Moore's Federal Practice, ¶ 0.75 [1-1], at 709.2 (3d. ed. 1999).  Through the enactment of 1332 (a)(3), the 1948 revisions clarified that such jurisdiction did exist and thus satisfied the aim of replacing confusing language, which led to circuit splits, with a "[c]oncise, clear, and direct expression[]."  H.R. Rep. No. 308, 80th Cong., 1st Sess. 5 (1947), *reprinted in* 1948 U.S. Code Cong. Serv. 1696.

When Congress amended § 1332 in 1976, it added an additional paragraph, i.e. subparagraph (4), which provided for suits between "a foreign state ... as plaintiff and citizens of a State or of different States."  At the same time, the amendment removed the term "foreign states" from subparagraph (2). Subparagraph (4) provides jurisdiction for foreign states as plaintiffs; 28 U.S.C. §1330 provides the jurisdictional basis for cases in which a foreign state is a defendant.  Subparagraph (4) was part of a larger act, which defined the circumstances when a foreign state could sue or be sued in federal courts.  *See* Foreign Sovereign Immunities Act, Pub.L. 94-583, 90 Stat. 2891 (1976).

9

To support its interpretation of § 1332 (a)(2), Iraola cites the canon of statutory interpretation that "identical words used in the same act are intended to have the same meaning." This canon of interpretation is based upon the presumption that in drafting provisions of the same statute, when Congress uses different language in similar sections, it intends different meanings. *See United States v. Gonzales*, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997). Iraola points to the inclusive language in § 1332(a)(4), which permits suits against "citizens of a State or of different States," and argues that the presence of that language in the newer paragraph demonstrates that Congress did not intend to include parties from multiple states under subparagraph (2). However, there is nothing in the legislative history of the act that added (4) and amended (2) that suggests Congress intended a different treatment for foreign states (subparagraph (4)) and foreign subjects or citizens (subparagraph (2)). *See generally* H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604. Indeed, there is nothing in the legislative history that discusses the meaning of § 1332(a)(2) after the language regarding foreign states was removed. *See id.* Given that the relevant language in §1332(a)(2) and (4) was written at different times, and that the emphasis of the Congress at the time of the 1976 amendment was clearly upon foreign states in federal courts and not upon jurisdiction in general, we do not believe that the

10

identical-words-in-the-same-act canon supports Iraola's interpretation in this case. Indeed, an equally plausible interpretation is that Congress was just making explicit in subparagraph (4) the central and well-established concept of providing the federal forum where the opposing parties are diverse.

Since the time of the adoption of the language at issue, no court has interpreted it in the manner in which Iraola suggests. In fact, the courts that have specifically addressed this interpretation have rejected it. *See De Korwin v. First National Bank of Chicago*, 156 F.2d 858 (7th Cir. 1946); *Jaffe v. Boyles*, 616 F. Supp. 1371, 1374-75 (W.D.N.Y.1985); *Niccum v. Northern Assurance Co.*, 17 F.2d 160 (D. Ind. 1927). Furthermore, there are many cases that have permitted citizens of different states to sue or be sued by a foreign citizen but have not specifically addressed the interpretation offered by Iraola. *See, e.g., Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707 (9th Cir. 1992); *Dullard v. Berkeley Assoc. Co.*, 606 F.2d 890, 893 (2d Cir. 1979); *Jackson v. Heiser*, 111 F.2d 310, 312 (9th Cir. 1940); *China Nuclear Energy Industry Corp. v. Arthur Andersen, LLP*, 11 F. Supp.2d 1256, 1258 (D.Colo. 1998); *Galaxy Investment Fund v. Fenchurch Capital Management, Ltd.*, No. 96 C 8098, 1997 U.S. Dist. LEXIS 13207, at *15 (N.D. Ill. Aug. 29, 1997); *Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122, 125 (S.D.N.Y. 1986); *Lavan Petroleum Co. v. Underwriters at Lloyds*, 334 F.

11

Supp. 1069, 1071 (S.D.N.Y. 1971). These cases finding jurisdiction have both preceded and followed the 1976 amendment upon which Iraola relies.

We concluded above that the identical-words-in-the-same-act canon does not support Iraola's interpretation. Moreover, a different canon of statutory interpretation supports the interpretation that § 1332(a)(2) permits jurisdiction in cases with aliens on one side and citizens of different states on the other. Congress is presumed to know the federal courts' interpretation of a statute that it intends to amend. *See Ankenbrandt v. Richards*, 504 U.S. 689, 700, 112 S. Ct. 2206, 2214 (1992). Thus Congress is presumed to know that all of the courts that interpreted the language in § 1332 (a) before the 1976 amendment and its precursors had interpreted the language in (2) to include suits involving aliens on one side and citizens of different states on the other. Where there is no indication that Congress intended to change the meaning courts have given to the statute, we are to presume that it did not intend any such change. *See id.*; *see also Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227, 77 S. Ct. 787, 790-791, 1 L.Ed.2d 786 (1957)(holding that ,with respect to the 1948 remodification of the Judicial Code, "no changes of law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed.").

While one possible interpretation of the language in § 1332(a)(2) does

support Iraola's position, we decline to adopt it in light of the more reasonable meaning that the same language sustains, a meaning consistent with courts' interpretation of the statute both before and after the 1976 amendment. Adopting Iraola's interpretation would result in incongruous results. For example, a corporation which is a citizen of two states would not be able to bring suit against citizens of a foreign state in federal court while corporations with one citizenship could. We do not believe that Congress intended such a result. In rejecting the interpretation Iraola proffers, we join all of the courts that have specifically decided this issue and those that have assumed that the statute encompassed actions between citizens of a foreign state on one side and citizens from different states on the other.

B.    Diversity Jurisdiction where Subjects or Citizens of Foreign States are on Opposite Sides of the Lawsuit.

Next we turn to Iraola's argument that the inclusion of defendant Geo Med also divests the court of subject matter jurisdiction. Iraola named Geo Med as a defendant, believing that it was a Georgia corporation, based on invoices that listed a Georgia address. However, after several failed attempts to serve Geo Med at that address, Iraola learned at a deposition that Geo Med was instead a creation of Argentine citizen Robert Alpert. Iraola thus argues that Geo Med is a citizen of Argentina and that the existence of foreign entities on both sides of the lawsuit

13

defeats jurisdiction. The Appellees respond by stating that Geo Med is a fictitious entity and thus cannot be a party to the suit.

It is a standard rule that federal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1558 (11th Cir. 1989). And because unincorporated entities are attributed the citizenship of their owners, *see Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058, 1067 n.17 (5th Cir. 1980),[4] that rule would mean that Geo Med is an Argentinian entity because its owner, Alpert, is Argentinian. Diversity of the parties is determined at the time that the complaint is filed, *see Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858, 860 (1991), and two circuits have determined that an unserved party's citizenship is considered in the calculus for assessing diversity, *see Howell v. Tribune Entertainment,* 106 F.3d 215, 217-18 (7th Cir. 1997); *Oppenheim v. Sterling*, 368 F.2d 516, 518 (10th Cir. 1966). We assume arguendo, without deciding, that the diversity analysis would include an unserved defendant whose foreign citizenship was not known until after discovery had begun. Accordingly, if Geo Med, an

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Argentine entity, is considered in the diversity analysis, this court would not have jurisdiction.

However, this court can dismiss a dispensable party in order to retain jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larran*, 490 U.S. 826, 833, 109 S. Ct. 2218, 2223 (1989); *Ingram v. CSX Transportation, Inc.*, 146 F.3d 858, 863 (11th Cir. 1998). Such power is to be used sparingly, and the court should carefully consider whether one of the parties will be prejudiced by the dismissal. *See id.* at 837-38, 109 S. Ct. at 2225.

Here, Iraola's only claim of prejudice is that it will suffer a tactical disadvantage if Geo Med is dismissed from the action. Specifically, Iraola asserts that prosecuting its claims against both Kimberly-Clark and Geo Med in the same court provides a tactical advantage. The problem with this argument is that Iraola sought, and obtained from the district court, permission to voluntarily dismiss this action so that it could sue all of the defendants in state court. The district court granted Iraola's request for voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(2), but only after ruling on Kimberly-Clark's counterclaim which had no independent jurisdictional basis. Thus Iraola is now free to pursue its claim against Kimberly-Clark and Geo Med in state court; Iraola's sole assertion of prejudice is nonexistent. We readily conclude that dismissing Geo Med as a

15

dispensable party will not prejudice Iraola, and thus that Geo Med should be dismissed pursuant to *Newman-Green* and *Ingram.*

Iraola also argues that Geo Med is an indispensable party. Because Iraola's claims were not adjudicated below and only Kimberly-Clark's counterclaim against Iraola was adjudicated before the court ordered the dismissal, only that counterclaim figures into the analysis of whether Geo Med is an indispensable party. Geo Med had no relation to that counterclaim and thus, under the factors enumerated in Fed. R. Civ. P. 19(b),[5] it cannot be considered an indispensable party. Therefore, because Iraola will not be prejudiced and Geo Med is not an indispensable party, we dismiss Geo Med as a party.

C.    Attorneys' Fees Pursuant to the District Court's Grant of Iraola's Motion for Voluntary Dismissal under Fed. R. Civ. P. 41(a)(2).

When Iraola filed for voluntary dismissal, the Appellees opposed the motion and asked the court to impose certain conditions if it granted the motion.

---

[5] Rule 19(b) provides:

Determination by Court Whenever Joinder not Feasible. . . . The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

16

Specifically, the Appellees sought an award of attorneys' fees that would cover the expenses they incurred in pursuing matters that would be useless in subsequent litigation. The district court did not address the Appellees' request and denied it by implication.

Rule 41(a)(2)[6] allows a plaintiff to dismiss an action voluntarily once he receives approval of the district court. The rule also permits the court to attach certain conditions to its order, such as those requested by the Appellees.

In *McCants v. Ford Motor Co.*, 781 F.2d 855 (11th Cir. 1986), the plaintiff sought and received a Rule 41(a)(2) dismissal so that she could bring suit against the defendants in another court. Although the defendants sought attorneys' fees for the work done in that case that would not be applicable in the new case, the court denied the request by implication. We held that we could not determine if the court abused its discretion because the court did not list any of the factors that it used in making the determination. *See id.* at 861. Thus we remanded the case,

---

[6] Rule 41(a)(2) provides:

By Order of Court. Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

with instructions for the district court to state its findings and conclusions. *See id.* This is precisely what occurred in this case and thus we remand with instructions to the court to state its findings and conclusions.

## III.  CONCLUSION

We reject Iraola's two jurisdictional challenges for the reasons above stated, and thus we affirm in part.   However, the district court was required to state its findings and conclusions regarding its failure to award attorneys' fees, and thus we vacate in part and remand.

AFFIRMED IN PART, VACATED IN PART and REMANDED.