Marianne OHMAN, Bengt Fellstroem, and Sigvard Kullman, on behalf of themselves and all others similarly situated, and derivatively on behalf of Vilcabamba International Corp., Plaintiffs,

v.

Sidney Howard KAHN (a/k/a Carlos Francisco Calderon), Carl Eric Lindstroem, Harley I. Lewin, David E. Jordan, Cecilia A. Hallman, Rachel Nelson, and Vilcabamba International Corporation, Defendants.

No. 87 Civ. 7117 (JFK).

United States District Court, S.D. New York.

April 25, 1988.

Julian Friedman, Andrew Luger, Stillman, Friedman & Shaw, P.C., New York City, for plaintiffs; J. Jonathan Schraub, Golden, Freda & Schraub, P.C., Washington, D.C., of counsel.

Robert Meshel, Megan Lee, D'Amato & Lynch, New York City, for defendant Harley I. Lewin.

Ira Postel, New York City, for defendant David E. Jordan.

## OPINION and ORDER

KEENAN, District Judge:

### BACKGROUND

Plaintiffs have filed a class action lawsuit against the defendants arising out of the purchase of shares in a corporation that has purportedly located, and had rights in, the "fountain of youth." Not surprisingly, it appears that the fountain was one which merely bubbled with litigation. The complaint alleges violations of the federal securities laws and RICO, and includes state law claims asserting common law fraud, breach of contract, negligent misrepresentation, legal malpractice and breach of fiduciary duty. Defendant Harley I. Lewin moves to dismiss the complaint on numerous grounds including lack of subject matter jurisdiction, plaintiffs' lack of standing, failure to comply with FRCP 23.1 and FRCP 9(b). Lewin also asserts that the claims under RICO and the federal securities laws fail to state a cause of action. Defendant, David E. Jordan, has joined in Lewin's motion.

### Facts

During the 1970's and 1980's, American society has become increasingly "health-conscious." This trend is reflected in the increased popularity of various spring and mineral water products. The plaintiffs' complaint arises out of the defendants' effort to capitalize on this market condition.

Vilcabamba International Corporation, S.A., ("VIC") was formed in 1978 and was incorporated in Panama. The company, allegedly run and controlled from New York, was created to market the water of Vilcabamba, Equador. Defendants sought to portray this water as one of the reasons that residents of Vilcabamba have very long lives. Promotional material allegedly written and distributed by the defendants indicates that there are proportionally more than four times as many people over age 65 in Vilcabamba than there are in the United States. Some of the residents live past the age of 100. While it is unknown at this stage of the litigation whether the defendants ever drank some of the water, it is alleged that a total of $6,000,000 was invested in VIC by over 300 people. It is charged that the 13,000 shares of stock which sold at an average price of $500 are currently worthless.

Plaintiffs accuse defendants of engaging in a huge two-part fraud. The first part of the scheme took place from 1978–1984. In 1978, VIC was formed, Vilcabamba land was purchased, and construction began on the property. A United States trademark for "Vilcabamba Water" was obtained.

However, the title to the land, and the United States trademark, were held by defendant Sidney Kahn in his own name and not by VIC. The complaint alleges that from 1978–1984, the defendants induced the plaintiffs to invest in VIC based on several misrepresentations and omissions. These included statements that VIC owned land and a water bottling factory in Vilcabamba, that VIC owned the "Vilcabamba Water" trademark, and that VIC was affiliated with Vilcabamba International Corporation of Equador. Promotional materials were allegedly prepared by the defendants in the United States, and were distributed in the United States and Europe.

Plaintiffs aver that phase two of the scheme began in 1984. At that time, defendants Kahn, Lindstroem and Hallman allegedly agreed to leave VIC's management in response to shareholder criticism. Many members of plaintiffs' class invested additional funds in VIC to assist further in bottling operations and to finance a "buyout" of the departing directors. Management of VIC shifted to defendants Lewin and Rachel Nelson and to David Jordan, an individual allegedly investigated and approved by Lewin. Additional misrepresentations were supposedly made during this period, including the statement that the product would be marketed by 1985.

The complaint asserts that Lewin was a VIC director and stockholder who also served as counsel. He allegedly had a hand in the creation of promotional materials that contained material misrepresentations and omissions. Lewin is also charged with playing a role in bringing Jordan into VIC. In addition to investigating and approving Jordan, it is alleged that Lewin drafted the so-called Jordan Agreement. Plaintiffs contend that in this document Jordan pledged to make VIC a public corporation in return for an additional $600,000 investment.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

■ Lewin moves under FRCP 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. Lewin contends that the alleged activities which occurred in the United States were only preparatory to the commission of any fraud. Therefore, he argues, the federal securities laws do not apply to the challenged conduct. Lewin points to the fact that VIC's principal assets—land and water processing plants—are located in Equador. In addition, Lewin notes that the VIC Board of Directors conducted meetings in Luxembourg, bank accounts were located in Europe, stock was sold in Europe, and the named plaintiffs are citizens of Sweden. Lewin argues that the fact that the Jordan Agreement was drafted in New York is of no moment because the Agreement was consummated in Luxembourg and was governed by Panamanian law.

Plaintiffs, on the other hand, point to numerous allegations in their lengthy complaint that they contend bring this dispute within the jurisdiction of this Court. The bulk of VIC's operations were conducted from New York and Florida. As a result, VIC had corporate records and bank accounts in New York. Important promotional material was allegedly prepared and printed in New York, and then mailed from New York. It is claimed that defendants Kahn and Hallman made phone calls from New York to communicate with sales agents and defendant Lindstroem who were overseas. Plaintiffs further point to the fact that stock certificates were issued in New York, and that New York media was used to solicit investors. Finally, plaintiffs cite the issuance of a United States trademark which was the subject of a misrepresentation.

The application of the federal securities laws to transnational transactions has been frequently litigated in this circuit. Two tests have emerged as an analytical framework for disposing of this issue. In *Schoenbaum v. Firstbrook*, 405 F.2d 200, 206 (2d Cir.), *rev'd with respect to the holding on the merits*, 405 F.2d 215 (2d Cir.1968) (en banc), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), the Second Circuit adopted an "effects test" in the context of acts occurring outside of the United States, but which cause

an effect within the United States. In *IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1017–18 (2d Cir.1975), the court applied a "conduct test" in the context of behavior in the United States causing foreign investment. Satisfaction of either standard will support the exercise of federal court subject matter jurisdiction. *See Psimenos v. E.F. Hutton & Co., Inc.*, 722 F.2d 1041, 1045 (2d Cir. 1983). The central policy concern under either test is whether the transnational transaction at issue is one Congress would view as warranting the expenditure of American judicial resources, as compared to leaving the controversy for a foreign tribunal. *Psimenos*, 722 F.2d at 1044–45 (quoting *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir.), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975)).

Because the conduct test is met by the allegations of the complaint, jurisdiction in the federal court is proper. The lynchpin of this analysis is whether the conduct in the United States directly caused the financial loss. *Psimenos*, 722 F.2d at 1046. As Judge Friendly observed, this determination hinges "not only on how much was done in the United States but also on how much ... was done abroad." *IIT v. Cornfeld*, 619 F.2d 909, 920–21 (2d Cir.1980) (footnote omitted). The complaint's allegations describe activities in the United States which were clearly integral to the success of the purported scheme. While each act standing alone might not support jurisdiction, taken together their cumulative weight is significant. The presence of corporate records, a United States trademark, the alleged use of New York as a base of operations, and the use of a New York lawyer supposedly to add legitimacy to the plan all implicate American interests. Moreover, this case is a class action, and it is possible that there will be American investors who were enticed by advertisements in a New York newspaper and over a New York radio station. Upholding jurisdiction in this case furthers Congress' interest that this nation not be used "as a

base for manufacturing fraudulent security devices...." *Vencap*, 519 F.2d at 1017.

## II. *Failure to Comply with FRCP 23.1*

■ Lewin moves to dismiss the derivative claims asserted by plaintiffs on behalf of VIC. Lewin contends that plaintiffs have failed to comply with FRCP 23.1 which provides in pertinent part,

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ... the corporation ... having failed to enforce a right which may properly be asserted by it, the complaint shall ... allege with particularity the efforts, if any, made by plaintiff to obtain the action plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for plaintiff's failure to obtain the action or for not making the effort.

In this case, plaintiffs assert in their derivative claim that the defendants breached their duties of care and loyalty to VIC, and that VIC's capital was used for the personal benefit of certain defendants and not for legitimate business purposes. The plaintiffs argue that their failure to make a demand on the corporate board is excused because it would have been futile. The Court concurs based on the complaint's allegations.[1]

■ The requirement of a demand on directors, codified in rule 23.1, is designed to prevent strike suits by minority shareholders and to minimize undue interference in corporate management. *Lewis v. Anselmi*, 564 F.Supp. 768, 772 (S.D.N.Y.1983). Implicit in this rule is the existence of an actual and ascertainable board of directors. It is well settled in the Second Circuit that a demand on the board need not be made where it would be futile. *Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir.1983); *Abramowitz v. Posner*, 672 F.2d 1025, 1033 (2d Cir. 1982); *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445, 450 (2d Cir.1978). A demand is presumed to be futile when

---

1. The Court notes in passing that the complaint states that the plaintiffs unsuccessfully sought an accounting from Jordan. Complaint ¶ 157.

the directors have a personal stake in the challenged transaction or have an adverse interest to that of the shareholders. *See Lewis,* 701 F.2d at 248.

The complaint currently before the Court alleges that the present composition of the VIC board is in dispute. The original board included defendants Kahn, Lindstroem, Nelson and non-party Josephine Bucari–Lindstroem. At a 1984 shareholders meeting, another board was selected and consisted of defendants Jordan, Nelson, Lewin and non-parties Folke Nilsson, Ray Lindahl and Anthony Zash. Of these directors, Nelson has allegedly refused to play any role in VIC despite her knowledge that VIC owned no assets in Equador, Lewin allegedly resigned from the board on February 12, 1985, Jordan refused to account for his expenditures and Zash could not be located. Adding to this morass is the fact that VIC is a Panamanian corporation, and as of July 23, 1987, the Panamanian Registry of Corporations listed the directors as Kahn, Lindstroem, Hallman and Bucari–Lindstroem. Of these directors, Kahn, Lindstroem and Hallman are alleged to be self-interested in that they received excessive salaries, commissions and reimbursement of personal, nonbusiness expenses.[2] In essence, plaintiffs set forth a corporate shell game in which they could not have located a majority of disinterested and objective directors. A demand would have been futile and perhaps impossible.

III. *Failure to Comply with FRCP 9(b)*

Federal Rule 9(b) requires that in averments of fraud, "the circumstances constituting fraud ... shall be stated with particularity." The rule is an important aspect of federal practice for several reasons. It serves to provide defendants with sufficient information concerning their alleged fraudulent conduct so that they may frame an intelligent and responsive pleading. *See Denny v. Barber,* 576 F.2d 465, 469–70 (2d Cir.1978). The rule can help protect a defendant's reputation by allowing for dismissal of conclusory and baseless allega-

tions of fraud. *See Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir. 1982); *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Moreover, the rule limits strike suits in the securities context, *see Ross,* 607 F.2d at 557, and prevents the waste of judicial resources that can be expended in groundless cases, *see Crystal v. Foy,* 562 F.Supp. 422, 424 (S.D.N.Y.1983). With these concerns in mind, the rule as applied in this circuit requires some indication as to when, where and by whom the alleged misrepresentations were made. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Hemming v. Alfin Fragrances, Inc.,* 86 Civ. 2563, slip op. at 5 (S.D.N.Y. February 9, 1987) (JFK) [available on WESTLAW, 1987 WL 6906]; *Mauriber v. Shearson/American Express, Inc.,* 546 F.Supp. 391, 394 (S.D.N.Y.1982).

The challenged complaint presents a mixed bag under rule 9(b); certain alleged misrepresentations and omissions are adequately pleaded, others are flawed but probably curable, and still others contain greater deficiencies. At the outset, however, the Court notes that the complaint is long and fairly detailed. It covers 81 pages and contains 268 paragraphs. For the most part, it adequately warns the defendants of the fraudulent conduct with which each is charged.

■ Two sets of misrepresentations and omissions clearly pass muster under rule 9(b). Paragraphs 107 through 111 concern statements made by Lewin about the background and qualifications of Jordan. The results of Lewin's examination are allegedly contained in telexes sent from New York to Sweden on approximately March 16, 1984. These allegations inform Lewin with sufficient detail as to what he represented (and failed to represent), how he made the representation, and when the statement was made. Paragraphs 112 through 118 similarly satisfy the rule.

2. One could not characterize the payments as bonuses linked to VIC's profitability, *see In re E.F. Hutton Banking Practices Litigation,* 634

F.Supp. 265, 271 (S.D.N.Y.1986) since the complaint alleges that the investors never received any return on their investment.

These contentions focus on the so-called Jordan Agreement, under which Lindstroem and Kahn were bought out as owners. The agreement further provided that Jordan would obtain an offer from an existing, but unidentified, American corporation to merge with VIC by purchasing its assets and assuming its liabilities. The agreement allegedly warranted that VIC had title to all of the property and assets which would be sold. The agreement was dated March 30, 1984 and was allegedly drafted by Lewin. These charges are not conclusory and do not violate rule 9(b).

■ A second area of alleged misrepresentations and omissions concern the preparation, printing and mailing of stock certificates, and various promotional materials, including a prospectus and financial statements. Complaint ¶¶ 75(a)-(c), 87. Although these contentions generally apprise the defendants of the challenged conduct, it fails to provide some time frame. Plaintiffs, who will have an opportunity to replead, need not specify the date and hour of the actions, but should provide the defendants with some approximation of the dates in question. It is clearly not necessary for the plaintiffs to be more specific regarding each defendant's role. The defendants are insiders, and these misrepresentations and omissions were made in certain documents. *See Luce,* 802 F.2d at 55. However, some of the documents themselves should be specified. For example, the "Vilcabamba–P Prospectus" is sufficiently specific, as is the mention of balance sheets from 1980 and 1983. Complaint ¶¶ 87, 75(b). However, the listing of "various corporate records, prospectuses, sales kits, videos, films, pamphlets, magazine articles and advertisements and other promotional materials" is too vague. Complaint ¶ 75(a). Some approximation of the date, service and content of these materials is necessary.[3] The defects in these allegations could probably be cured fairly easily. The Court recognizes that the resulting complaint will be even more lengthy, but that is what the law requires in this case.

■ The final area of misrepresentations and omissions have more serious faults vis-a-vis rule 9(b). Paragraph 75(d) of the complaint charges the defendants with communicating through the telephone and other forms of wire and paragraph 75(e) refers to face-to-face meetings between the defendants and shareholders and potential investors in New York, Luxembourg, Sweden and Copenhagen. These allegations fail to provide any time frame, and do not in any way give the content of the communications. Nor do these allegations distinguish among the defendants. These two subparagraphs do not involve the preparation of corporate documents by insiders which can obviate the need for particularizing among the defendants. As a result, these two subparagraphs—75(d) and 75(e)—must be repleaded to specify the speaker, the approximate time of communication and the content of the communication. *See Luce,* 802 F.2d at 54, 55; *Hemming v. Alfin Fragrances, Inc.,* 86 Civ. 2563 slip op. at 5 (S.D.N.Y. February 9, 1987) (JFK); *Equitable Life Assurance Society v. Alexander Grant & Co.,* 627 F.Supp. 1023, 1029 (S.D.N.Y.1985).

The above discussion leads the Court to its conclusions concerning paragraphs 92 and 134 of the complaint. The subparagraphs within each paragraph should be linked to the particular written or oral misstatement or omission. To the extent a document prepared by a corporate insider is involved, the amended pleading need not specify which insider was responsible.[4] Oral communications, however, should be more specifically alleged in the manner set forth above. The Court recognizes the potential difficulties plaintiffs could confront at this stage of the litigation, and further recognizes that rule 9(b) is to be read in conjunction with rule 8. For this reason,

---

3. Because some of the allegations currently satisfy rule 9(b), this case is clearly going to proceed through discovery. If plaintiffs cannot be more specific now concerning these materials, they might be able to do so at the end of discovery. At that time, the Court would entertain a motion to amend the complaint to include any misrepresentations or omissions unearthed during discovery.

4. Lewin is clearly an insider for the purposes of this motion based on the complaint's allegations.

the parties are referred to footnote 3, *supra,* in this Opinion and Order.

## IV. *Failure to State a Cause of Action Under RICO*

██ Lewin raises several grounds on which he contends plaintiffs' allegations under RICO fail to state a claim. Lewin first asserts that plaintiffs have failed to allege a pattern of racketeering activity. The Court need not dwell on this argument because this complaint clearly sets forth a RICO cause of action.

To plead a RICO pattern, a plaintiff must allege a degree of continuity plus relationship between, or among, the predicate acts. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (quoting S. Rep. No. 617, 91st Cong., 2d Sess., at 158. (1969)). The Second Circuit interprets this factor to require, "the existence of an enterprise whose illicit activities or unlawful goals are continuing ones." *Creative Bath Products, Inc. v. Connecticut General Life Insurance Co.,* 837 F.2d 561, 564 (2d Cir.1988) (citing *Albany Insurance Co. v. Esses,* 831 F.2d 41 (2d Cir.1987); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)). This approach prevents plaintiffs from abusing RICO by using the statute in cases that do not present the threat of continuing criminal activity. In *Creative Bath, Albany Insurance* and *Beck,* the Second Circuit affirmed dismissals of RICO counts where the alleged scheme had a single, short-lived goal. This Court recently dismissed a RICO count for the same reason in *Delta Holdings v. National Distillers and Chemical Corp.,* 85 Civ. 3439, slip op. at 22–23, (S.D.N.Y. April 8, 1988) (JFK) [Available on WESTLAW, 1988 WL 36330]. The instant complaint, however, is far different. The alleged goal of the defendants could scarcely be termed "short-lived." The Vilcabamba scam, as alleged, did not have an "'obvious terminating goal or date.'" *See Albany Insurance,* 831 F.2d at 44 (quoting *United States v. Ianniello,*

808 F.2d 184, 192 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987)). The conduct set forth in the complaint presents a danger of on-going illegal conduct, and a pattern of racketeering activity is alleged.

██ For the most part, Lewin's other arguments concerning the RICO count are also unpersuasive. He contends that plaintiffs have not alleged that they were injured by the challenged racketeering conduct. This is incorrect. The plaintiffs assert in paragraphs 171 and 182 of their complaint that violations of RICO caused them to suffer damages. One can infer from the complaint that the predicate acts set forth caused plaintiffs to invest their funds without obtaining anything in return. Lewin also argues that the complaint fails to allege that he engaged in any predicate acts. As will be set forth later, the complaint properly alleges, in part, that Lewin violated the federal securities laws. This conduct can serve as a predicate act or acts for RICO. The complaint also properly alleges mail fraud regarding the so-called Lewin telexes.[5] The additional allegations which involve use of the mails and wire could also constitute predicate acts. At the moment, however, these allegations are deficient under the standards of FRCP 9(b) as discussed earlier. *See supra,* at 1308–09.

██ Lastly, Lewin argues that the RICO claim is deficient because plaintiffs have failed to allege an enterprise that is distinct from a culpable person, as is required in this circuit. *See Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). This contention is correct only to the extent that the enterprise is alleged by the plaintiffs to include individual defendants. Complaint ¶ 173. However, this complaint clearly alleges that VIC and Vilcabamba International Corporation of Equador, Limited Company were two enterprises. This allegation falls within the parameters of the statute.

---

**5.** The Jordan Agreement might also serve as a predicate act of mail fraud if it were alleged to have been mailed.

Thus, the motion to dismiss the RICO claim is denied. .

## V. *Failure to State a Claim Under the Federal Securities Laws*

### A. Section 17(a) of the Securities Act of 1933

■■■ Defendant Lewin seeks dismissal of Count III of the complaint which alleges a violation of section 17(a) of the 1933 Securities Act. Lewin urges this Court to abandon controlling Second Circuit precedent, and hold that no implied private cause of action exists under the section.

In *Kirshner v. United States*, 603 F.2d 234, 241 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), the Second Circuit held that a private cause of action exists under section 17(a). While *Kirshner's* analysis has been criticized and its holding might be subject to reexamination, *see Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985), it has not been overruled by a subsequent panel, and remains the law of the circuit. There are strong arguments against the *Kirshner* result, *see CPC International Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 278–84, 514 N.E.2d 116, 120–124, 519 N.Y.S.2d 804, 808–12 (1987); *Anderson v. Lowrey*, 667 F.Supp. 105, 109–10 (S.D.N.Y.1987), which may eventually be the law of the circuit. Until that time, however, the Court is bound by *Kirshner* and must uphold the section 17(a) claim.

### B. Claims Under Section 10(b) of the Securities Exchange Act of 1934

In addition to recasting his arguments concerning failure to plead fraud with particularity, Lewin advances two further arguments regarding alleged violations of section 10(b) and rule 10b–5. He contends that the complaint does not allege facts from which one may infer scienter and that his purported misrepresentations and omissions were not "in connection with" the sale of a security. Each argument is unpersuasive.

■■■ FRCP 9(b) provides that a condition of mind, such as scienter, may be averred generally. The circumstances allegedly constituting a fraud, however, must be pleaded with greater specificity. As discussed earlier, there are certain defects in the current complaint concerning the pleading of particular fraudulent circumstances. However, there are no defects regarding the averment of scienter. The strong inference one minimally obtains through an objective reading of this complaint is that Lewin was in a position to know that VIC did not own the assets it claimed to own, and that Jordan was not qualified to run the corporation. While plaintiffs may have difficulties in proving these assertions, they have met their current burden regarding this aspect of FRCP 9(b).

■■■ Lewin contends that the "in connection with" requirement of a section 10(b) and rule 10b–5 claim is not met. Lewin bases this on his contention that he became involved with VIC after 1981, and the fact that certain plaintiffs purchased their shares before that time. This argument ignores certain allegations and facts. The complaint is brought on behalf of a class that is divided into three sub-classes: those who purchased shares prior to 1984, those who made additional investments in 1984–1985, and those who first invested in 1984–85. Complaint ¶ 19. The "in connection with" element could clearly be met regarding those in the final two sub-classes, and certain members of the first sub-class. While some investors may have invested prior to, and independent from, Lewin's conduct, this is a matter to be addressed during discovery and at trial.

## VI. *Plaintiffs' State Law Claims*

### A. State Law Fraud

To the extent that Lewin argues that plaintiffs have failed to plead fraud with the requisite particularity, the Court refers to its discussion at *supra*, 1307–09. The complaint properly alleges the reliance element on behalf of the class, and the request to dismiss the fraud count on this ground is denied.

### B. State Law Professional Malpractice and Breach of Fiduciary Duty

Lewin contends that the professional malpractice claim against him must be dismissed because neither privity nor causation is alleged. This argument has no merit. Regarding the professional malpractice claim, Lewin's position fails because the cause of action is brought derivatively on behalf of VIC, and not the investors. Thus, the privity element is met since Lewin was allegedly serving as counsel to VIC. Lewin's causation argument is directed to the professional malpractice and breach of fiduciary duty claims. The complaint, however, expressly alleges causation and sufficiently pleads the claim.

### C. The Punitive Damage Claim

In addition to plaintiffs' other requested relief, the class action complaint seeks punitive damages. Lewin seeks dismissal of this claim. The standard in New York for an award of punitive damages is strict. The defendants must engage in conduct that is grossly fraudulent and involves high moral culpability. *Walker v. Sheldon*, 10 N.Y.2d 401, 405, 179 N.E.2d 497, 498–99, 223 N.Y.S.2d 488, 491 (1961). The instant complaint adequately sets forth conduct from which the trier of fact could find that this standard was met. If proven, this case involves the efforts of a group of individuals to swindle investors into putting their money in a corporation that did not own the property and rights which were essential to the venture's success. A trier of fact could reasonably find this behavior to involve high moral culpability.

### VII. *The Motion of Defendant Jordan*

Defendant David E. Jordan has also moved to dismiss plaintiffs' complaint. Jordan, despite the factual differences between him and Lewin, merely submits a notice of motion and attorney's affidavit which refers to Lewin's affidavit. Jordan has not submitted a memoranda of law in support of his motion. Jordan's motion is, however, granted to the same extent and denied to the same extent, as the motion of Lewin.

### CONCLUSION

The motions under FRCP 12(b)(1) and 23.1 are denied. The motion under FRCP 9(b) is granted in part. The motions under FRCP 12(b)(6) are denied. Plaintiffs are granted leave to replead within 20 days consistent with this Opinion and Order. The parties are directed to proceed with discovery, and are to appear for a status conference on July 11, 1988.

SO ORDERED.