**EUROPE AND OVERSEAS COMMODITY TRADERS, S.A., Plaintiff,**

v.

**BANQUE PARIBAS LONDON, Paribas Global Bond Futures Fund, Paribas Asset Management Ltd., and John Arida, Defendants.**

No. 94 Civ. 7471 (BSJ).

United States District Court, Southern District of New York.

June 28, 1996.

John J.D. McFerrin–Clancy, Schlam Stone & Dolan, New York City, for plaintiff.

J. Portis Hicks, Winthrop, Stimson, Putnam & Roberts, New York City, for defendants.

## Amended Memorandum Decision [1]

JONES, District Judge:

Plaintiff Europe and Overseas Commodity Traders, S.A. ("EOC") brings this action alleging eleven counts arising out of the alleged fraudulent sale of securities by Banque Paribas London ("Paribas"), Paribas Global Bond Futures Fund (the "Fund"), Paribas Asset Management Ltd. (the "Fund Manager"), and John Arida ("Arida") (collectively referred to as "Defendants").

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b), claiming that this Court lacks subject matter jurisdiction over the case and personal jurisdiction over the defendants. In the alternative, defendants move the Court to dismiss this action on the grounds of *forum non conveniens.* For the reasons set forth below, defendants' motion is hereby granted.

### Background

■ The following facts are taken from the pleadings and supporting affidavits.[2] Defendant Paribas, a French corporation, created and controls defendant Paribas Glob-

1. This amended memorandum decision replaces the memorandum decision issued in this case on June 19, 1996. See correct citation for *Allstate Life Insur. Co. v. Linter Group Ltd.* on page 537.

2. For the purposes of a motion to dismiss on the grounds of lack of subject matter jurisdiction under Rule 12(b)(1), the Court may consider the complaint as well as outside materials such as affidavits. *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). In support of their motion, defendants submitted affidavits from John Baker, compliance officer of the London branch office of Paribas (hereinafter "Baker decl."); John Arida, a defendant who was employed in the London branch office of Paribas (hereinafter "Arida decl."); Pierre Corbiau, an employee of Banque Paribas Luxembourg and secretary of Paribas Global Bond Futures Fund (hereinafter "Corbiau decl."); Denis Coulon, a director of Paribas Asset Management Ltd. (hereinafter "Coulon decl."); and Andrew Charles Smith, an English attorney (hereinafter "Smith decl."). Plaintiff submitted a declaration from shareholder Carr (hereinafter "Carr decl."). Also, defendants submitted a further declaration from Mr. Baker (hereinafter "Baker reply decl."), plaintiff submitted a further declaration from Mr. Carr (hereinafter "Carr sur-reply decl.") and defendants submitted a final declaration from Mr. Baker (hereinafter "Baker response to Carr sur-reply decl.").

al Bond Futures Fund, a corporation organized under the laws of Luxembourg. Paribas is also the parent of defendant Paribas Asset Management, a Bahamian corporation, which is the manager of the Fund. Defendant John Arida, a United Kingdom national, was employed by Paribas in London as an account manager during the period of time relevant to the complaint; in that capacity, he advised investors who maintained accounts with Paribas regarding their investment options. Arida decl. at ¶ 2.

██ Plaintiff is a Panamanian corporation with its principal place of business in Monaco.[3] Its sole shareholder is Alan Carr, a Canadian citizen, who for most of the time of the investment at issue was residing in Florida. Plaintiff EOC established a securities trading account with Paribas in London in or about October 1992 by entering an Investment Agreement. The Investment Agreement contains choice of law and choice of forum provisions which state that "[t]his Agreement is governed by English Law. Disputes arising out of the Agreement shall be subject to the jurisdiction of the English courts to which for our benefit you submit."

In October 1993, EOC invested in the Fund using the account it established with Paribas. The circumstances surrounding plaintiff's initial purchase of shares in the Fund are in dispute. Both parties agree that Carr was in England for a period of time in the fall of 1993 and that he left England on October 9, 1993. Carr concedes that before he left, he was introduced to Arida and had conversations with him concerning the securities trading account he held with Paribas. Carr denies that Arida solicited the investment in the Fund during these conversations; rather, he avers that Arida solicited the purchases by telephone and facsimile while Carr was in Florida between October 14 and October 18. Carr claims that he made the first purchase in the Fund on October 18, and he made subsequent purchases in October and November.

Arida contends, however, that Carr placed the initial order of shares in the Fund on behalf of EOC on October 8, *before* he left England, rather than on October 18, as plaintiff contends. Arida concedes that after Carr made this initial purchase in England, he had several communications with Carr regarding EOC's investment in the Fund while Carr was in Florida, beginning on or about October 14. Arida agrees that during the period of October through November 1993 EOC made further investments in shares in the Fund.

Each side has submitted documentary evidence to support its position as to when the initial purchase was made. To support its allegation that the initial purchase was made while Carr was in Florida on October 18, 1993, plaintiff submits a June 15, 1994, letter from Arida listing EOC's purchases in the Fund which indeed lists the date for the first purchase as October 18, 1993. The Court finds this letter unpersuasive for two reasons.

First, under the Fund rules governing share valuation, the share price Carr claims to have paid on October 18 is incorrect. Under the Fund Rules, a "purchase" of shares of the Fund can occur only on a valuation day at their then-applicable net asset value; valuation days, which determine the purchase price of Fund shares, are Mondays. In addition, "applications for purchase received ... not later than 1:00 p.m. on the second bank business day preceding a Valuation Day will, if accepted, be dealt with on the basis of the relevant Net Asset Value calculated at such Valuation day ..." Baker reply decl. at ¶ 5. As applied to EOC's purchase, an order for the purchase of Fund shares placed on October 8, 1993, a Friday, could not be valued on Monday, October 11, 1996, because October 11 was less than two business days from the

---

**3.** Plaintiff disputes that its principal place of business is in Monaco, contending that its sole business is the making of investments, activity for which "it does not need and does not maintain any formal offices for the conduct of its investment business." Carr decl. at ¶ 3. Defendants contend, on the other hand, that plaintiff does indeed maintain business offices in Monaco, as reflected in the business address listed in the Investment Agreement it entered with Paribas. In that Agreement, plaintiff also listed Monaco as the place where shareholder and directors meetings are held. Based on the record, this Court finds that plaintiff's principal place of business is in Monaco.

date the order was placed. Rather, the shares would have been valued (*i.e.*, their purchase price determined) on Monday, October 18.[4] Significantly, Carr acknowledges that on his initial purchase, he paid the price per share which was listed as the value on October 18, 1993. Carr decl. ¶ 12. If Carr had in fact placed the order for the securities on October 18, he would have paid the amount which was the value on October 25 under the rules of the Fund.[5]

The second reason the Court finds the June 15, 1994, letter from Arida to Carr unpersuasive is that the letter is internally inconsistent. Some of the dates listed as "purchases" are valuation dates, suggesting that the date referred to as the date of "purchase" was in fact the date of valuation. Some of the dates listed as "purchases" are "settlement" dates, suggesting that the "purchase" referenced was the payment date. Some of the dates do not correspond to either purchase or settlement dates and thus might actually represent purchase order dates. Because neither plaintiff nor defendants has provided a wholly satisfactory explanation for the dates in this letter, this Court concludes that Arida was using the term "purchase" loosely to refer to each of the above three possibilities.

Thus, construing all facts in favor of the plaintiff, keeping in mind that this Court need not draw all argumentative inferences in favor of the plaintiff, *Atlantic Mutual Insur. Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196, 198 (2d Cir.1992), this Court finds that plaintiff's initial purchase of shares in the Fund was made in England on October 8, 1993.

Neither party disputes that after several phone calls and facsimiles between Arida and Carr while Carr was in Florida during October and November 1993, plaintiff made additional purchases in the Fund. Plaintiff also contends that during the month of October, Paribas solicited and sold shares in the Fund to another investor, Matthew O'Brien, who is not a party to this action. Plaintiff avers that Mr. O'Brien is a resident alien in the United States and a British subject who was residing in Florida at the time of his investment. Plaintiff's allegation is unsupported: it has not submitted an affidavit by O'Brien himself. However, defendants have submitted O'Brien's investment application which reflects that at the time that O'Brien applied to make a purchase in the Fund, he listed his residence as London and his citizenship as British. *See* Baker reply decl. ¶ 10, exh. 6. Plaintiff offers nothing to controvert this evidence other than his averment that O'Brien was resident in Florida at the time of purchase, and in fact now is a citizen of the United States. *See* Carr decl. at ¶ 19. Thus this Court credits the defendants' submission, and in light of this submission, finds that O'Brien resided in England at the time of his investment in the Fund.

Plaintiff alleges that during the course of solicitation—both before and after the initial

4. Defendants contend that after plaintiff placed its initial purchase order on October 8, 1993, Arida had his assistant, Janice Scarr, send a facsimile to the Fund in order to place this purchase order. The fax does not refer to the name of the person or entity who is placing the purchase. It simply reflects that an order was submitted on October 8. Also, it places an order for five shares in the Fund. This number of units is significant because plaintiff's initial purchase, as reflected in the June 15, 1994, letter sent by Arida to Carr, was for ten shares.

Baker explains that this initial purchase for five shares was combined with another purchase of five shares that plaintiff placed on October 14. This is supported by plaintiff's phone records which reflect that calls were made by Carr to Arida on October 14 and 15. Carr sur-reply decl. ¶ 21 and exhibit. Baker explains that all ten shares—the five ordered on October 8 and the five ordered on October 14—were valued on the same day, October 18, 1993. In support of this theory, defendants submit a record kept by Paribas which reflects that ten shares purchased by plaintiff were valued on October 18, 1996, and were settled (*i.e.*, paid for) three days later.

5. Plaintiff contends, however, that he was told that the "two business days" rule would not apply to his purchase. If the rules truly did not apply to plaintiff's purchases, then Carr could have purchased shares on October 18 and had them valued on the very same day. Baker asserts that even if Arida did make such a representation, it has no bearing on when the initial purchase was made because the two-day rule *did* in fact apply to plaintiff's purchases. Other than Carr's unsupported claim that he believed the Fund rules would not apply to his purchases, this Court finds no reason to believe that the Fund rules of valuation did not apply to this particular transaction.

purchase—Arida made various misrepresentations regarding the nature of the Fund that later proved to be false. Plaintiff claims that he entered into the investment on the basis of those misrepresentations and invested a total of $1,788,805.25. The value of the Fund declined in early 1994. As of May 31, 1994, EOC's account in the Fund was $774,274.60; as a result of the decline in the Fund's value, plaintiff's claimed loss is about $1,000,000.

### *Discussion*

■ Defendants move to dismiss plaintiff's complaint on three grounds: lack of subject matter jurisdiction, lack of personal jurisdiction and under the doctrine of *forum non conveniens*. Before it can consider a *forum non conveniens* motion, a court must first determine whether it has jurisdiction over the case and the parties. *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 840–41, 91 L.Ed. 1055 (1947).

### Subject Matter Jurisdiction

■ The Court must consider whether there is subject matter jurisdiction based on a federal question pursuant to 28 U.S.C. 1331.[6] The Securities Exchange Act is silent as to extraterritorial application. *See e.g., Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir.), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991). In order to determine whether a federal court has subject matter jurisdiction over federal securities claims brought by foreign plaintiffs, courts must determine whether "Congress intended that the precious resources of the United States courts be devoted to a specific transnational securities claim." *Itoba Ltd. v. Lep Group PLC*, 54 F.3d 118, 121–22 (2d Cir.1995) (quoting *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir.), *cert. denied sub nom, Bersch v. Arthur Andersen & Co.*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975)), *cert. denied*, —— U.S. ——, 116 S.Ct. 703, ——

L.Ed.2d —— (1996). In making this determination, courts apply the "conduct test" or the "effects test." The Second Circuit has stated that these two tests can be applied in conjunction. "Indeed an admixture or combination of the two often gives a better picture of whether there is sufficient United States involvement to justify the exercise of jurisdiction by an American court." *Itoba*, 54 F.3d at 122.

■ Under the "effects" test, a federal court has subject matter jurisdiction if the defendant's conduct abroad has "substantial" impact in the United States, *see Alfadda*, 935 F.2d at 478, that is, if the conduct impacts on "stock registered and listed on [an American] national securities exchange and [is] detrimental to the interests of American investors." *Itoba*, 54 F.3d at 124 (quoting *Schoenbaum v. Firstbrook*, 405 F.2d 200, 208 (2d Cir.), rev'd with respect to holding on merits, 405 F.2d 215 (2d Cir.1968) (in banc), cert. denied sub nom. *Manley v. Schoenbaum*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969) (brackets in original)). Under the "conduct" test, a federal court has subject matter jurisdiction if the defendant committed acts in the United States that were more than merely preparatory to the fraud, and those acts or culpable failures to act within the United States directly caused the claimed loss. *Alfadda v. Fenn*, 935 F.2d at 478.

### Effects Test

■ The plaintiff has failed to establish that this Court has subject matter jurisdiction under the effects test, because defendants's alleged acts have not caused "substantial" impact in the United States. The shares are not registered or listed on an American securities exchange: the Fund is a foreign investment entity which has no place of business in the United States, and none of its investors are United States citizens or residents. Corbiau decl. ¶¶ 3–4. Moreover,

---

6. Plaintiff's complaint is deemed amended to allege federal question jurisdiction rather than diversity jurisdiction, as plaintiff has explained that its reference in the complaint to section 1332 was a typographical error and concedes that there is no diversity jurisdiction here. Subject matter jurisdiction cannot be based on diversity jurisdiction pursuant to section 1332 because

neither the plaintiff nor any of the defendants are citizens of the United States. As it is well-established that the federal courts will not entertain actions between aliens, jurisdiction fails under section 1332. *See, e.g., Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 789–90 (2d Cir.1980).

plaintiff's purchase was made on its London account. Although plaintiff may have suffered loss as a result of the alleged fraud, plaintiff is a Panamanian corporation with its place of business in Monaco. Its loss was not suffered in the United States, despite the fact that plaintiff's sole shareholder placed subsequent orders while he happened to be in Florida.

Plaintiff further attempts to satisfy the effects test by alleging that another investor, O'Brien, purchased shares in the Fund while he resided in the United States and thus the loss that he suffered occurred in the United States. This Court has already found that O'Brien was residing in England at the time of his investment in the Fund.[7] As such, plaintiff has failed to show that the defendants' alleged fraud had an effect on an investor in the United States.

Having concluded that defendants' conduct abroad has no impact in the United States, this Court must examine whether the conduct test provides a basis for the exercise of subject matter jurisdiction over plaintiff's claims.

### Conduct Test

In considering the conduct test, the Court of Appeals stated that the securities laws may be given extraterritorial effect to protect "foreigners residing outside the United States if acts or culpable omissions within the United States directly caused losses to be sustained." *Bersch v. Drexel Firestone, Inc.*, 519 F.2d at 993. This standard implicitly recognizes that "the less interest this country has in a defrauded investor, the

greater the contacts the fraud must have with this country before extraterritorial application will be given to the Securities Act." *O'Driscoll v. Merrill Lynch*, No. 83 Civ. 616, 1983 WL 1360, at *3 (S.D.N.Y. September 8, 1983), modified on motion, No. 83 Civ. 616 (CBM) (unpub.) (S.D.N.Y. January 5, 1984). In the instant case, plaintiff is a foreigner residing abroad because it is a Panamanian corporation with offices in Monaco.[8] In order for this Court to have subject matter jurisdiction under the conduct test, plaintiff must show that misrepresentations made to plaintiff's sole shareholder while he was in the United States directly caused plaintiff's loss.

This Court has found that the initial order of shares in the Fund occurred while Carr was in England; after Carr left England, however, Arida and Carr continued to communicate by telephone and facsimile while Carr was in Florida.[9] During these transatlantic communications, Arida allegedly made further misrepresentations in order to solicit additional purchases by plaintiff in the Fund. These communications constitute activity "within" the United States. *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1335 (2d Cir.1972) ("[W]e see no reason why, for the purposes of jurisdiction to impose a rule, making telephone calls and sending mail to the United States should not be deemed to constitute conduct within it.")

The Court of Appeals has stated that subject matter jurisdiction under the conduct test is based upon the "perpetration of fraudulent acts themselves [but] does not extend to mere preparatory activities or the failure

---

7. Moreover, even if this Court had found that O'Brien was residing in the United States at the time of his investment and as a result, his loss were considered to have occurred in the United States, his loss would *not* constitute a substantial effect in the United States without further allegations of other American investors. Plaintiff nowhere states what Mr. O'Brien lost from his $100,000 investment in the Fund. *Compare Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir.) (holding that ownership by American residents representing 2.5% of plaintiff's shareholders and 5.3 million shares with a market value of about $120 million constitutes a substantial effect in the United States), *cert. dismissed*, 492 U.S. 939, 110 S.Ct. 29, 106 L.Ed.2d 639 (1989).

8. Plaintiff argues that, as an alter ego of its sole shareholder Carr, it is located wherever Carr is located, and like him, is a resident alien. This Court rejects this argument, *see O'Driscoll*, 1983 WL 1360, at *3 n. 8 ("Whatever his reasons may have been, O'Driscoll set up Bernat as an offshore corporation with its offices thousands of miles away."), because it is the status of the plaintiffs, defendants, and the transaction that is critical. *See CA 79–3030 Fidenas AG v. Compagnie Internationale*, 606 F.2d 5, 8 (2d Cir.1979) (approving lower court's findings).

9. These communications were sometimes initiated by Arida and sometimes initiated by Carr. *See* Arida decl. at ¶ 8.

to prevent fraudulent acts where the bulk of the activity was performed in foreign countries." *IIT v. Vencap,* 519 F.2d 1001, 1018 (2d Cir.1975); *see Alfadda v. Fenn,* 935 F.2d at 478. The only domestic acts—the transatlantic communications aimed at inducing plaintiff's further investment in the Fund—were merely a continuation of the fraud that was already consummated in England with plaintiff's initial investment.

Furthermore, this Court is guided by the principle that direct causation depends "not only on how much was done in the United States but also on how much ... was done abroad." *IIT v. Cornfeld,* 619 F.2d 909, 920–21 (2d Cir.1980) (footnote omitted). In the instant case, the following acts were done abroad: plaintiff opened the trading account with Paribas in London; plaintiff placed the initial order of shares in the Fund while Carr was in London; each time plaintiff ordered the purchase of shares in the Fund, the actual purchase was made in London, as the funds used to pay for the shares were debited from plaintiff's trading account with Paribas, Carr Sur–Reply decl. ¶ 9; and internal communications were made by defendants abroad so that defendants could process plaintiff's purchases in the Fund. On the other hand, the acts that were done in the United States were additional communications between Arida and Carr in order to solicit the further investment by plaintiff in the Fund. Consideration of defendants' activities both domestically and abroad reveals that the acts that were done in the United States are outweighed by the acts that were done abroad—the establishment of the account, the initial purchase order, and the actual purchases with the funds in the account—which essentially constitute the core of the transaction. *See O'Driscoll,* 1983 WL 1360, *5 (acts in the United States to conceal churning scheme were found not to constitute the direct cause of plaintiff's loss); *Butte Mining PLC v. Smith,* 876 F.Supp. 1153 (D.Mont.1995), *aff'd,* 76 F.3d 287 (9th Cir. 1996). *Compare Ohman v. Kahn,* 685 F.Supp. 1302, 1306 (S.D.N.Y.1988). The communications made while Carr was in Florida were only ancillary to the initial fraud in London and therefore can not be said to have directly caused plaintiff's loss.

Moreover, the rationale underlying the conduct test illustrates that its application here to establish subject matter jurisdiction is inappropriate. The Court of Appeals has reiterated that "[i]nherent in the conduct test is the principle that Congress does not 'want the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners.'" *Itoba,* 54 F.3d at 122 (quoting *Psimenos v. E.F. Hutton & Co.,* 722 F.2d 1041, 1045 (2d Cir.1983)) (quoting *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1017 (2d Cir.1975)). In the instant case, the United States was never used or intended to be used as a base for manufacturing fraudulent securities for export. Rather, the securities at issue were sold to plaintiff's shareholder first while he was in England, and then again when he happened to be residing in Florida. Shareholder Carr's presence in Florida is pure happenstance in the context of this transaction, and cannot serve as the basis for conferring subject matter jurisdiction for plaintiff's claims which arise out of foreign transactions that have nothing to do with the United States.

Even applying a mixture of the conduct and effects test, as permitted by *Itoba,* fails to establish subject matter jurisdiction. As set forth above, defendants' alleged fraud had no effect at all in the United States or on an American investor. Combining this nonexistent "effect" with the transatlantic communications aimed at soliciting plaintiff's further investment—which alone do not rise to the level of direct causation of plaintiff's injury—can not possibly bolster the argument for subject matter jurisdiction. To the contrary, combining the tests in an effort to establish subject matter jurisdiction serves only to highlight the underlying foreign nature of the transaction.

Accordingly, this Court finds that there is no subject matter jurisdiction over plaintiff's claims.

### Forum Non Conveniens

Even if this Court were to find that it had subject matter jurisdiction under either the conduct or effects test, the case

would have to be dismissed on the grounds of *forum non conveniens* as to any defendants over whom this Court could exercise personal jurisdiction.[10] Only defendant Paribas is subject to personal jurisdiction.[11] As to Paribas, this Court would dismiss the action on the grounds of *forum non conveniens.*

■ In its discretion, a court can dismiss an action on the grounds of *forum non conveniens* when there is an alternative forum to hear the case and when trial in the chosen forum would be oppressive and vexatious to the defendant out of all proportion to the convenience to the plaintiff, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ To guide the determination of convenience, the Supreme Court listed factors a court should consider relating to "private" interests applicable to the litigants, and "public" interests, applicable to the court. Factors involving the private interest include

(i) ease of access to sources of proof, (ii) availability of compulsory process for attendance of unwilling witnesses, (iii) access to documents, (iv) other practical considerations that make trial of a case easy, expeditious and inexpensive, and (v) enforceability of a judgment once it is obtained. Factors involving the public interest include (i) the problems of court congestion, (ii) local interest in the controversy, (iii) the advantages of having a court familiar with the law, and (iv) the unfairness of burdening courts in an unrelated forum with jury duty. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

### A. Alternative Forum

■ The Supreme Court has stated that "dismissal on grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiffs' chance of recovery." Courts should consider the law in the alternative forum on a *forum non conveniens*

**10.** The Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment, *Bersch v. Drexel Firestone,* 519 F.2d at 998; *Leasco,* 468 F.2d at 1339, which "allows the exercise of personal jurisdiction over a defendant whose 'conduct and connection' with the forum State are such that he should reasonably anticipate being haled into court there." *SEC v. Unifund SAL,* 910 F.2d 1028, 1033 (2d Cir.1990) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Under Due Process principles, a defendant should have at least minimum contacts with the forum state in order to make extraterritorial service foreseeable, so that maintenance of the suit in the forum will not offend traditional notions of fair play and substantial justice. *See Asahi Metal Indus. v. Superior Court of Calif.,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987).

**11.** Under the *Restatement (Second) of Conflict of Laws* (1971) which this Circuit uses as a guide to assessing whether there is personal jurisdiction over a foreign defendant when claims are made under federal securities laws, courts may exercise personal jurisdiction where (1) the defendant does business in the forum [§ 35], (2) the defendant does an act in the forum with respect to a cause of action in tort arising from that tort [§ 36], or (3) causes an effect in the forum by an act done elsewhere [§ 37]. Defendants concede

that Paribas does business in the United States and thus is subject to personal jurisdiction in the United States.

By contrast, Arida, the Fund, and the Fund Manager are not subject to personal jurisdiction. Although Arida did an act in the forum by virtue of his transatlantic communications with Carr, such acts did not make being subject to jurisdiction in the United States reasonably foreseeable: Arida believed that he was soliciting the investment of plaintiff, a foreign corporation, and not Carr, who was residing in the United States at the time Arida made some contacts with him. To subject him to jurisdiction based on these phone calls would offend traditional notions of fair play and substantial justice.

With respect to the other defendants, the Fund is a foreign entity whose shares are not registered in the United States and are not sold to American investors. Both the Fund and the Fund Manager contemplated that the investor was plaintiff, a Panamanian corporation with its office in Monaco, rather than Carr. Neither the Fund nor the Fund Manager have had minimum contacts with the United States. Even if Arida were acting on behalf of the Fund and the Fund Manager as an agent, which he denies, personal jurisdiction over the Fund and the Fund Manager would nevertheless be unavailing because this Court may not assert jurisdiction over Arida. Accordingly, the only defendant over whom this Court has personal jurisdiction is Paribas.

motion only where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. at 265.

 Plaintiff urges that the remedy offered by the alternative forum of the United Kingdom is unsatisfactory because at the heart of plaintiff's action are claims under federal securities laws. The fact that plaintiff's claims arise under federal law does not, however, make the United Kingdom a per se inadequate forum. *See Allstate Life Insur. Co. v. Linter Group Ltd.,* 782 F.Supp. 215 (S.D.N.Y.1992). Rather, it is one factor that this Court may consider in determining the adequacy of the alternative forum. Moreover, "[s]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Borden Inc. v. Meiji Milk Products Co.,* 919 F.2d 822, 829 (2d Cir.1990) (citation omitted), *cert. denied,* 500 U.S. 953, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991).

Defendants have submitted an affidavit by a lawyer admitted to practice in England who avers that the English Courts allow rescission of contracts induced by misrepresentation and awards damages for fraudulent misrepresentation and for negligent misrepresentation. Further, if the plaintiff relied on misrepresentations made by Arida, plaintiff could claim that Paribas is vicariously liable in damages for his misrepresentations. Smith decl. ¶¶ 16–17. Moreover, plaintiff would have certain claims under the securities laws of the United Kingdom, including the rules of the Securities and Futures Authority, a self-regulating organization; violation of these rules provides a civil remedy in damages. *Id.* ¶¶ 18–23. Based on the affidavit of Mr. Smith, this Court is persuaded that an English forum applying English law would provide plaintiff with an adequate remedy.

For the foregoing reasons, the Court finds that an adequate alternative forum exists.

**B. Plaintiff's Choice of Forum**

 Courts generally give deference to a plaintiff's choice of forum because it is as-

sumed that a plaintiff will choose a convenient forum. *See Piper Aircraft Co.,* 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23. Where, however, the plaintiff is foreign, its choice of forum is entitled to less deference. *Id.; Murray v. British Broadcasting Corp.,* 81 F.3d 287, 290 (2d Cir.1996). Plaintiff attempts to bolster the presumption that his choice is convenient by citing authority for the proposition that although a foreign plaintiff's choice may be given less deference, a plaintiff can overcome this by making a strong showing of convenience.

Plaintiff has failed to show that the forum of the United States courts, let alone the United States District Court for the Southern District of New York, is at all convenient. Plaintiff is a Panamanian corporation with its principal place of business in Monaco; its sole shareholder is a Canadian citizen who resides for less than a majority of the year in Florida. Carr decl. ¶ 2. Each of the defendants is foreign. The alleged fraud occurred both in England and by transatlantic communications while defendant was in England and plaintiff's shareholder was in Florida. Because the plaintiff fails to make any showing of convenience, its choice of forum is deserving only of "some weight." *Murray,* 81 F.3d at 290.

**C. Private Interest Factors**

1. Access to Source of Proof: Documents

Plaintiff argues that all of the documents are in the United States because they were faxed to him while he was in Florida. Defendants, on the other hand, contend that all of the documents relating to the investment account, Paribas, the Fund, and plaintiff corporation itself are located overseas. In order to litigate the fraud claims, the parties inevitably will need to present to the court documents relating to the investment account held by defendant Paribas for EOC, the losses experienced by plaintiff corporation, and the Fund itself. These documents are located overseas and therefore weigh in favor of defendants' motion to dismiss.

 Nevertheless, in light of technological advances in transportation and communi-

cation, this Court recognizes that the location of documents is a factor which is to be given less weight now, almost fifty years after the Supreme Court's initial listing of private interest factors in *Gilbert. See Overseas Programming Co. v. Cinematographische Commerz–Anstalt,* 684 F.2d 232 (2d Cir.1982).

### 2. Compulsory Process for Unwilling Witnesses and Costs of Obtaining Willing Witnesses

Plaintiff contends the witnesses it will need are non-parties who participated in the sale or purchase of the unregistered securities in the United States. According to plaintiff, the fact that these witnesses could not be compelled to testify in England would result in prejudice to plaintiff. Nevertheless, this Court notes that these "witnesses"—who are claimed to be other American investors who invested in the Fund—have not yet been identified. The witnesses that have been identified are defendants' witnesses, including the bank employees who were witness to the transactions. Five of the defendants' witnesses could not be compelled to testify in the United States. *See* Baker supplemental decl. ¶ 4.

All of the identified witnesses, with the possible exception of Carr, reside overseas.[12] Thus transporting witnesses from England to the United States—even if they were within this Court's subpoena power or would appear voluntarily—would be extremely inconvenient and would impose a prohibitive cost on defendants. *See e.g., Scottish Air International, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1232–33 (2d Cir.1996). Furthermore, the Court of Appeals has recently affirmed the principle that live testimony of key witnesses is necessary "where the plaintiffs alleged that the defendants had conspired to defraud them." *Id.*

### 3. Forum Selection and Choice of Law Clauses

The Investment Agreement entered into by EOC and Paribas when EOC initially established its account with Paribas in Octo-

ber 1992 contains choice of law and choice of forum clauses. The Investment Agreement "[t]his Agreement is governed by English Law. Disputes arising out of the Agreement shall be subject to the jurisdiction of the English courts to which for our benefit you submit." Baker decl. at ¶ 7, exh. 1.

Parties dispute whether plaintiff's action "arises out of" the Investment Agreement that contains the forum selection and choice of law clause. In *Medoil Corp. v. Citicorp,* 729 F.Supp. 1456 (S.D.N.Y.1990), the plaintiff had opened an account with defendant bank in Switzerland by a series of agreements which provided that Swiss law would govern all relations between defendant and plaintiff in a Swiss forum. Plaintiff's action alleged, *inter alia,* that it purchased certain securities using funds it had deposited into an account established with defendant because of false statements made by defendant's employees. The court found that this dispute was governed by Swiss law because the "action arises out of the relationship created when the parties signed the forms containing the forum-selection clause." 729 F.Supp. at 1458. *See also Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (holding that controversies and claims "arising out of" a contract for the sale of a business covered securities violations related to that sale); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353 (2d Cir.1993) (rejecting, based on Supreme Court precedent, plaintiff's argument that only allegations of contractual violations fall within the scope of the forum selection and arbitration clauses), *cert. denied,* 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993).

The facts of *Medoil* closely resemble the facts of the case at bar. Plaintiff EOC claims that defendants violated securities laws in connection with the sale of securities on an account established by the Investment Agreement which contains a forum selection clause. These claims "arise out of" the relationship between plaintiff and defendant Paribas which was established by the Investment Agreement.

---

**12.** Carr resides for only part of each year in the United States. It is unclear where he resides for the remaining part of each year.

Moreover, "[i]t defies reason to suggest that a plaintiff may circumvent forum selection ... clauses merely by stating claims under laws not recognized by the forum selected in the agreement." *Roby,* 996 F.2d at 1360. Thus, the fact that plaintiff brings claims under the United States securities laws can not preclude the application of English law which both parties contemplated would govern. Furthermore, this Court recognizes the strong public policy in favor of forum selection clauses. *See e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). In light of the clear intention of the parties to be governed by English law in an English forum with respect to disputes arising from that agreement, this Court finds that English law must govern this case in an English forum.

### E. Public Interest Factors

#### 1. Court Congestion

There would be little delay in either forum. In this Court, a date for trial would be set for shortly after the completion of discovery and determination of any further motions. In England, a date generally would be set for trial within six months after the completion of discovery. *See* Smith decl. at ¶ 29.

#### 2. Local Interest in Controversy

The United States does have an interest in affording United States citizens a forum, in enforcing its securities laws, and in preserving the integrity of markets for securities in the United States. *See, e.g., Allstate,* 782 F.Supp. at 225. In this case, none of the parties are United States citizens, nor are the securities issued by a United States corporation. And although "the United States courts have an interest in enforcing United States securities laws, this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens." *Allstate Life Insur. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1002 (2d Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993).

In fact, this case has little to do with New York or any other jurisdiction in the United States, except for the fortuitous presence of plaintiff's shareholder in Florida at the time of some of the purchases underlying this action. Rather, this case has a great deal to do with England: the trading was done with an account that was established in England at the London branch of defendant Paribas, a French bank; the trading was in securities issued by a Luxembourg company, managed by a Bahamian company, and solicited by a United Kingdom national who was employed by defendant Paribas. The United Kingdom has a substantial interest in determining whether a British citizen who was employed by the London office of a French bank fraudulently induced the purchase of securities in London. In light of the foreign nature of this case and the fraud alleged, the English courts have a greater interest in adjudicating this case than the United States courts.

#### 3. Familiarity with Law:

In light of the forum selection clause and choice of law clause which designates English law as governing, an English court will have to decide a case brought by plaintiff under English law.

#### 4. Other Factors

In light of the foreign nature of the transactions, the foreign plaintiff and the foreign defendant, this Court concludes that the case remaining before it is essentially foreign. The fact that the owner of the Panamanian corporation happened to be in Florida at the time of some of the purchases can not form the basis for local interest by United States courts, especially a court in the Southern District of New York. This Court is mindful that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843. Thus, even giving plaintiff's choice some weight in the balance of factors, this Court concludes that because this forum is inconvenient to defendants out of all proportion to the convenience to the plaintiff, and because an adequate alternative forum exists for the adjudication of plaintiff's claims, dismissal of the case on the grounds of *forum non conveniens* is appropriate.

### *Conclusion*

Because this Court lacks subject matter jurisdiction over plaintiff's claims, defendants' motion to dismiss on the grounds of lack of subject matter jurisdiction is hereby GRANTED. Even if subject matter jurisdiction were to be found, the Court would grant defendants' motion to dismiss on the grounds of *forum non conveniens.*

**So ordered.**